**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**MARK J. DOVE**
Dove & Dillon, P.C.
North Vernon, Indiana

ATTORNEYS FOR APPELLEES:

**JON B. LARAMORE**
**CATHERINE A. CLEMENTS**
Baker & Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FAITH WILDER-NEWLAND, | ) | |
| | ) | |
| Appellant-Intervenor, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1109-DR-395 |
| | ) | |
| APRIL KESSINGER (f/k/a WILDER), | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JENNINGS CIRCUIT COURT
The Honorable William E. Vance, Special Judge
Cause No. 40D01-0905-DR-81

**May 17, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Faith Wilder-Newland ("Grandmother") appeals the trial court's denial of her petition to establish visitation with her son's children. Grandmother raises three issues which we consolidate and restate as one: whether the trial court clearly erred in denying Grandmother's visitation. Concluding the trial court did not commit clear error, we affirm.

## Facts and Procedural History

In 2009, B.W. ("Father") attacked A.K. ("Mother") with a knife, stabbing her in the face. After his arrest, Father was granted supervised visitation with his three children, M.Z.W., M.E.W., and S.M.W.[1] Grandmother attended those visits. After Father was convicted and sentenced to concurrent sentences of six years for Class C felony battery with a deadly weapon and four years for Class D felony criminal recklessness with a deadly weapon, he no longer had visitation with the children. When Father's visitation ceased, Grandmother filed a petition to establish visitation with her grandchildren.[2]

In April 2010, Mother and Father divorced. The decree of dissolution granted Mother sole legal and physical custody of the children, established child support, and resolved other issues regarding the children but did not resolve grandparent visitation. One year later, Grandmother filed a second petition to establish visitation with the children.

---

[1] The record suggests M.E.W. is not Father's biological child. Appellant's Appendix at 8; Transcript at 8. The trial court noted no issue related to this fact was litigated, and therefore it treated M.E.W. as Father's child and Grandmother's grandchild for purposes of determining visitation.

[2] Grandmother filed this petition as part of Mother and Father's dissolution action. Although Grandmother did not move to intervene, the issue of visitation had been litigated within the confines of the dissolution action until the July 2011 hearing. The trial court therefore concluded that any procedural error was waived. Tr. at 3-4.

In July 2011, the trial court held a hearing on Grandmother's petition. Following the hearing, the trial court denied grandparent visitation in an order which included the following findings of fact and conclusions of law:

Findings
\*\*\*
13. During the time [Father's] criminal case was pending [Father] was allowed to visit with the children for two or three hours, once a month.
14. [Grandmother] was allowed to be present during the visits . . . .
\*\*\*
16. [Grandmother] has not had contact with the children since April, 2011.
\*\*\*
18. None of the children have ever had extended visits with [Grandmother].
19. [Grandmother] has never had overnight visits with any of the children.
\*\*\*
21. The Court was left with the impression from [Grandmother]'s testimony that she believes that [Mother]'s conduct was the genesis of the attack by [Father].
22. [Mother] voiced concerns about the effects on the children following contact with [Grandmother].
23. [Mother] reported that the children became reserved and "acted out" and without visits they are more "normal".

Conclusions
\*\*\*
3. [Mother]'s opposition to Court ordered visitation by [Grandmother] was an exercise by her of her right as a parent to make decisions concerning the custody, care and control of her children and [Grandmother] failed to rebut the presumption that she was acting in her children's best interest. . . .

The Court has concluded that no evidence establishes that [Mother] is an unfit parent. The Court has therefore given special weight to her position to oppose Court ordered visitation. The Court has also determined that [Grandmother] has failed to carry her burden of proof that grandparent visitation is in the children's best interest.

Appellant's App. at 7-9.

Grandmother now appeals. Additional facts will be supplied as appropriate.

3

I. Standard of Review

Grandmother's primary argument on appeal is that the trial court erred in denying her court-ordered visitation rather than limiting visitation, as Grandmother believes would have been appropriate and believes to have been Mother's opinion expressed at the hearing. Nevertheless, we review a trial court order granting or denying grandparent visitation under the two-tiered clear error standard described in Indiana Trial Rule 52(A). Megyese v. Woods, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004).

> In applying a two-tiered standard of review, we first determine whether the evidence supports the findings and then whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence to support the findings or the findings fail to support the judgment. We do not reweigh the evidence or determine witness credibility. Rather, we consider only the evidence most favorable to the trial court's judgment, with all reasonable inferences drawn in favor of the judgment.

Id. (quotations and citations omitted). Further, we give substantial deference to trial courts in family law matters. Julie C. v. Andrew C., 924 N.E.2d 1249, 1259 (Ind. Ct. App. 2010). Because Grandmother appeals a negative judgment, she must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law. Nunn v. Nunn, 791 N.E.2d 779, 783 (Ind. Ct. App. 2003). This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions, for clear error only. Especially here, where the standard of review is clear error, it is a family law case where we give the trial court substantial deference, and the issue is fact-based and one in which the trial

4

court heard testimony and weighed evidence and entered explicit findings thereon, it is our role as an intermediate appellate court to review the record only for errors which we are authorized to rectify.

## II. Trial Court Findings and Conclusions

The trial court concluded essentially that denial of grandparent visitation is in the best interest of the children and that Grandmother failed to prove otherwise. Upon reviewing the record in accordance with our standard of review, we conclude that the evidence presented supports the findings and the findings support the conclusions.

Specifically, Mother testified that the children had difficulty adjusting to visitation in the past and answered affirmatively when asked if she was "afraid that if grandparent visitation was granted . . . that they would struggle with that adjustment, yet again[.]" Tr. at 40 (ellipses in original). This supports the trial court's finding that "[Mother] voiced concerns about the effects on the children following contact with [Grandmother]." Appellant's App. at 9.

Mother also testified that she was "not comfortable" with Grandmother exercising extended court-ordered visitation because of potential health risks to the children, the possibility that Grandmother might attempt to reunite the children with Father, and the potential difficulty of the children's adjustment to visitation based on prior incidents of their acting out during and/or after visitation. See Tr. at 34-41. Mother also expressed her concern that Grandmother might facilitate the children's contact with Father by writing letters or calling (either of which could be done even during a short visitation), and that at the

5

time of the hearing Mother did not believe such contact would be in the children's best interest. See id.

Grandmother testified regarding actions by Mother which Grandmother viewed as "what led" Father to commit criminal acts. Id. at 22. This testimony supports the trial court's statement that it "was left with the impression from [Grandmother]'s testimony that she believes that [Mother]'s conduct was the genesis of the attack by [Father]." Appellant's App. at 8.

The trial court also found that "no evidence establishes that [Mother] is an unfit parent," and "therefore" the trial court gave "special weight to [Mother's] position to oppose Court ordered visitation." Id. at 9.

Finally, Mother also responded in the affirmative when asked if she requests that the trial court "remove [M.E.W.] . . . from any possible visitations with grandparents[.]" Tr. at 32-33; see id. at 48 (Mother argued in closing that "if Your Honor . . . chooses to grant visitation in this case, that it would be very minimal and certainly not more than, than what the Court granted in, uh . . . the divorce decree, with grandparents having visitation, uh, . . . once a month only. Uh . . . we would ask that the middle child, [M.E.W.], who is not the biological son of [Father] and not the biological grandson of [Grandmother] be excluded from that. And, uh . . . and not be involved, period.") (ellipses in original).[3] It is abundantly

---

[3] Visitation with M.E.W. was apparently singled out for further discussion because M.E.W. is not the biological child of Father.

We note that closing arguments are not evidence. Perkins v. State, 483 N.E.2d 1379, 1387 (Ind. 1985); see Bass v. State, 947 N.E.2d 456 (Ind. Ct. App. 2011) (noting a jury was instructed that the State's improper closing arguments do not constitute evidence, and concluding that the partial impropriety of the closing argument did not amount to fundamental error), trans. denied. We point out this portion of Mother's closing argument in response to the dissent's reference to a different portion of the closing argument, in which

clear that Mother did not want the trial court to order that Grandmother may have visitation with M.E.W.

Considering only the evidence which supports the judgment and reasonable inferences therefrom, the evidence described above supports the trial court's findings as to visitation with all three children. These findings support the conclusions that "[Grandmother] failed to rebut the presumption that [Mother] was acting in her children's best interest," and, most importantly, "that [Grandmother] has failed to carry her burden of proof that grandparent visitation is in the children's best interest." Id. In other words, Grandmother failed to carry her burden of proof that grandparent visitation is in the best interest of the children, and this failure is sufficient reason to uphold the order denying visitation.

### III. Grandparent Visitation

"[I]f a parent is fit, a trial court is required to give special weight to the parent's decision regarding grandparent visitation. . . . [T]his presumption is rebuttable and the petitioning grandparent has the burden of rebutting this presumption." Crafton v. Gibson, 752 N.E.2d 78, 98 (Ind. Ct. App. 2001). Here, the trial court made an explicit finding that Mother was a fit parent, and accordingly, gave special weight to Mother's decision to deny

---

Mother asks that visitation with "the children" be very limited and not totally eliminated. Dissent at 2. Mother's trial counsel made several arguments in closing – one of which was that Mother wanted only limited visitation, another of which was that Mother did not want any visitation, another of which was that Mother especially did not want visitation with M.E.W., and another of which may be summarized as Mother's view that she should determine the degree of visitation, if any, because she knows the best interest of her children. See Tr. at 47-48. Mother made several alternative arguments at trial, each of which might be supported by different portions of her testimony. Per our standard of review, we determine only whether evidence supports the findings and the findings support the judgment. In any event, even if Mother clearly stated in closing that she wished for limited and not denial of visitation and made no alternative argument, a closing argument is not evidence.

7

Grandmother's visitation. Grandmother had the burden to rebut the presumption that Mother was fit, and failed to do so. On appeal Grandmother does not appear to argue that Mother is an unfit parent, but that Mother decided to limit and not deny Grandmother's visitation. This is a request for us to reweigh the evidence presented and enter findings of fact. We will not reweigh the evidence; rather, as stated above, we review the evidence to determine if it supports the trial court's findings.

Indiana Code section 31-17-5-2 provides that the trial court "may grant [grandparent] visitation rights if the court determines that visitation rights are in the best interests of the child." Here, the trial court made an affirmative finding to the contrary, that visitation is <u>not</u> in the best interest of the children. This ultimate conclusion, supported by the evidence and without more, is sufficient to affirm the trial court order.

As a result, it is not dispositive whether the trial court erred in concluding that Mother opposed any and all court-ordered visitation. The dissent takes issue with the previous statement, and contends we are abandoning our commitment to ensure trial courts give special weight to a fit parent's decision regarding grandparent visitation. This contention is incorrect. Rather, a central point of disagreement between the majority and the dissent is how to ascertain what Mother decided. We know that she did not want visitation at all with M.E.W. Tr. at 32-33. Mother expressed various concerns with Grandmother's visitation, at least two of which would not be allayed by limited visitation – preventing contact with Father by telephone or letter-writing, and the children's potential need for emergency healthcare. With these facts in evidence, it is not unreasonable for a trial court to infer that Mother

8

wanted exclusive control over whether or when and how Grandmother would be allowed visitation with the children. Deeming Mother a fit parent, the trial court obliged. Upon reviewing the evidence presented, we conclude the trial court's findings were supported by the evidence and reasonable inferences therefrom.

The dissent argues we should read the record differently, focus on different portions of Mother's testimony (as opposed to those portions that support the trial court's findings or Mother's testimony as a whole and in the context of the entire record), and remand for the trial court to review the record and enter findings completely opposite than it did the first time. We note that in advocating for remand, the dissent does not call for a new hearing – perhaps because Mother has now demonstrated on appeal she does not disagree with the trial court's decision. Dissent at 5. Rather, the dissent advocates for remand for the trial court to "reweigh the evidence submitted at the hearing." Id. In other words, the dissent would have the trial court "give weight to Mother's decision to allow visitation," id., and the trial court would be forbidden from reviewing the evidence and finding that Mother opposed all court-ordered visitation.

To more directly address the dissent's concern that we have disregarded in this case that the trial court may have erred in concluding Mother opposed all court-ordered visitation, we state here that a fit parent's decisions are entitled to special weight, per Crafton and other case law, and in that way is entitled to decide the propriety of visitation. The dissent seems concerned that Mother is somewhat disenfranchised or left out of the decision-making process. The order does not preclude visitation; under the trial court's order and this opinion

9

affirming, Mother now has complete discretion and the ability to grant visitation on the terms she decides.

Assuming arguendo the trial court erred in concluding Mother opposed all court-ordered visitation,[4] the fact remains that the trial court's denial of grandparent visitation is rooted in its well-supported conclusion regarding the best interest of the children. Our supreme court has held that "where a trial court has made special findings . . . the reviewing court may affirm the judgment on any legal theory supported by the findings." Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998). Stated differently, even if the trial court erred in concluding that Mother opposed all court-ordered visitation, the evidence supports the trial court's ultimate conclusion that denial is in the children's best interest, and Indiana Code section 31-17-5-2 only authorizes the trial court to award visitation if it finds doing so is in the children's best interest.

We acknowledge that our court has also held: "once a parent agrees to some visitation, the dispute is no longer over whether the grandparent will have any access to the child, but instead over how often and how much visitation will occur." Crafton, 752 N.E.2d at 96. This holding might become relevant to this case if we were to consider evidence which is not most favorable to the judgment – which we are prohibited from doing and will not do – specifically, portions of Mother's testimony which suggest her intention to limit rather than deny visitation. For example, the dissent contends "[a] careful review of the fifty-one-page

---

[4] As noted several times, such a conclusion can only be reached by considering evidence which is not most favorable to the trial court's judgment. Cf. Megyese, 808 N.E.2d at 1213 (stating that we consider only the evidence most favorable to the trial court's judgment and draw all reasonable inferences in favor of the judgment).

10

transcript of the hearing on this issue shows that the dispute between the parties was not over access to the children, but instead over how often and how much visitation would occur." Dissent at 2.

In our review of the transcript, it appears Mother expressed frustration as to the change in family dynamics with the children now living without Father and an understanding that the children had difficulty adjusting to visitation with Father and Grandmother when it occurred. Mother did not express exactly what degree of visitation she preferred, if at all, but she did testify extensively regarding her concerns. And while the dissent notes that "Mother represented no less than four times that she did not oppose visitation," id., she also testified explicitly that she did not want Grandmother to have any visitation with M.E.W. Taking a big-picture view of the proceedings and Mother's testimony as a whole, it would not have been unreasonable for the trial court to infer that Mother would like to decide the nature and amount of visitation on her own. While this preference might be the norm, it is significant that the trial court found Mother to be a fit parent, and as a result, gave her opinion special weight and presumed she acted in the best interest of the children. Agreeing that Mother's determination of the nature and amount of visitation is in the best interest of the children, the trial court decided to not require visitation at all.

Again, even if we were to consider evidence which does not support the judgment, the following statement from Crafton does not warrant we reverse or remand this case: "once a parent agrees to some visitation, the dispute is no longer over whether the grandparent will have any access to the child, but instead over how often and how much visitation will occur."

11

752 N.E.2d at 96. The dissent reads this portion of <u>Crafton</u> to suggest that once a fit parent expresses his or her willingness to allow some grandparent visitation, the trial court's role immediately changes from determining whether visitation would be appropriate to determining the scope and logistics of visitation which it must order. Our case law does not bind trial courts in this manner or to this degree. Rather, with special reference to <u>Crafton</u>, we have explained:

> Acting under [the presumption that a fit parent's decision is in the best interest of the child], courts must give special weight to a parent's decision to deny or limit visitation. Second, a court should give some weight to the fact that a parent has agreed to some visitation. Still, while we must presume, under <u>Troxel</u>, that a fit parent's decision regarding visitation is in the child's best interests, that presumption is rebuttable. Thus, a grandparent seeking visitation has the burden of rebutting the presumption that a decision made by a fit parent to deny or limit visitation was made in the child's best interest.

<u>Spaulding v. Williams</u>, 793 N.E.2d 252, 258 (Ind. Ct. App. 2003) (citations and internal quotations omitted).

Our case law and the presumption which <u>Spaulding</u> explains provide helpful guidance to a trial court in making this decision by flagging considerations for a trial court to give "special" and "some" weight. <u>Id.</u> Based on <u>Spaulding</u> and other case law, we conclude that it is ultimately the trial court which determines whether visitation is in the best interest of the children – the grandparent bears the burden to prove that visitation is in the best interest of the child and the trial court is the ultimate arbiter of the facts.

Here, the trial court made an explicit finding that Grandmother failed to meet her burden. We will not substitute our judgment for that of the trial court. It is not the role of our court to reverse and remand this case to force the trial court to enter an order specifying

12

the frequency of visitation when it determined that none at all would be in the best interest of the children. Regardless of whether portions of Mother's testimony suggest it was her intention to deny visitation in total, deny the nature and extent of visitation Grandmother sought, or to allow some unspecified type or amount of visitation, the trial court found that Grandmother failed to meet her burden to prove that what Mother sought was not in the best interest of the children, and as a result concluded that Mother had the right to make that decision.[5]

Contrary to the dissent's strenuous argument, our decision to affirm because evidence supports the trial court's finding that no visitation is in the best interest of the children does not render meaningless case law holding that a trial court must give special weight to a fit parent's decision regarding grandparent visitation. The trial court has entered a finding as to what Mother's decision was, we deem that finding supported by the evidence, and that finding supports the trial court's ultimate conclusion. And further, Grandmother is not entitled to the presumption; the presumption is provided for the benefit of Mother and she received that benefit here. Grandmother bore the burden to prove that visitation is in the best interest of the children and failed to do so.

In sum, our disagreement with the dissenting opinion in this case is a fundamentally different understanding of the standard of review. We believe we are abiding by well-established legal principles explained above. Our approach under the clear error standard of review also properly defers to trial court judges who come face-to-face with the parties and

---

[5] If Mother truly does intend to allow Grandmother limited visitation, she does not need a court order to do so. Mother is free to allow visitation on her own terms without a court order.

are in a better position than us to evaluate witnesses' sincerity, veracity, and intentions by hearing variations in speech, observing body language, and in other ways.[6]

But at the same time, we do not take our principled approach in a vacuum. Here, our principled approach is also supported by the trial court's finding of what is in the best interest of the children, which is the paramount concern in all family law cases. We do not believe this deference to be avoidance of an issue because, especially in this case, the trial court's resolution of the matter still allows Mother – a fit parent who the trial court and we presume to make decisions in the best interest of the children – to allow visitation if and how she sees fit.

## Conclusion

In abiding by our standard of review and Indiana substantive family law which focuses on the children's best interest and places the burden to prove that visitation is

---

[6] Our supreme court has made the following comments regarding why abiding by the standard of review in family law cases is especially important:

> It is certainly true that appellate courts give considerable deference to the findings of the trial court in family law matters . . . . Whether the standard of review is phrased as "abuse of discretion" or "clear error," this deference is a reflection, first and foremost, that the trial judge is in the best position to judge the facts, to get a feel for the family dynamics, to get a sense of the parents and their relationship with their children – the kind of qualities that appellate courts would be in a difficult position to assess. Hon. Denise R. Johnson, Address at the 2004 Appellate Judges Summit (Nov. 13, 2004). Secondly, appeals that change the results below are especially disruptive in the family law setting. Id. And third, the particularly high degree of discretion afforded trial courts in the family law setting is likely also attributable in part to the "fluid" standards for deciding issues in family law cases that prevailed for many years. Id. (citing Maurice Rosenberg, Appellate Review of Trial Court Discretion, 79 F.R.D. 173, 175 (1978)).

MacLafferty v. MacLafferty, 829 N.E.2d 938, 940-41 (Ind. 2005) (footnote omitted).

Although the dissent characterizes our approach and our supreme court's approach in MacLafferty as providing the trial court with "discretion to be wrong," dissent at 4, "wrong" is subjective, and our standard of review provides a methodical process for determining when a decision actually is "wrong." The trial court's decision is not "wrong" simply because the dissent reads the record differently. It would be "wrong" if it was not supported by the evidence or consistent with substantive family law. Here the findings are supported by

14

appropriate with the grandparent, we are compelled to affirm the trial court order declining grandparent visitation where it ultimately concluded that doing so was in the children's best interest and consistent with Mother's decision, and that Grandmother failed to satisfy her burden of proof. Therefore, we affirm.

Affirmed.

NAJAM, J., concurs.

VAIDIK, J., dissents with separate opinion.

---

the evidence, and the decision is consistent with substantive law, of which the primary concern is the best interest of the children.

15

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FAITH WILDER-NEWLAND, | ) | |
| | ) | |
| Appellant-Intervener, | ) | |
| | ) | |
| vs. | ) | No. 40A01-1109-DR-395 |
| | ) | |
| APRIL KESSINGER (f/k/a WILDER), | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |
| | ) | |

**VAIDIK, Judge, dissenting.**

A fit parent's decision to allow her children to visit with their grandparents is entitled to be given weight by a trial court when it decides whether grandparent visitation is in the best interest of the grandchildren. Because the majority renders this well-established legal principle meaningless, I respectfully disagree with my colleagues.

Grandmother, a high school English teacher, has the misfortune of being the mother of a son who committed atrocities against her grandchildren's Mother. Her son's conduct landed him in prison. Grandmother consequently desired to continue her relationship with her grandchildren, and to that end, she filed a petition with the trial court requesting visitation with her grandchildren. Mother did not oppose visitation. Instead, Mother sought only to limit visitation with Grandmother. The trial court, in its findings denying all grandparent

16

visitation, concluded that Mother opposed court-ordered visitation. The evidence does not support this finding.

A careful review of the fifty-one-page transcript of the hearing on this issue shows that the dispute between the parties was not over access to the children, but instead over how often and how much visitation would occur. For example, during her testimony, Mother stated, "I am comfortable with [Grandmother] having visitation now, but I am not comfortable with the overnights and the week away and stuff . . . I'm not comfortable with that at all." Tr. p. 34 (ellipses in original). When asked if Mother was asking the court to limit visitation between Grandmother and the children, Mother said yes. *Id.* Mother later reiterated, "And like I said before, I don't have a problem with visitation but I do not want overnights . . . especially initially." *Id.* at 40 (ellipses in original). To cap the proceedings, in closing argument, Mother's counsel argued that "[Mother] is not asking that [the children] are precluded from seeing their grandmother . . . she is just asking that it be very limited." *Id.* at 47 (ellipses in original).

Despite all evidence to the contrary, in its findings of fact entered two months after the hearing, the court concluded that Mother opposed visitation. This finding was clearly erroneous. Because Mother represented no less than four times that she did not oppose visitation, the evidence does not support the trial court's finding to that effect.

This was not the only error the trial court committed, however. The trial court afforded "special weight" to Mother's supposed opposition to visitation. Appellant's App. p. 9. In doing so, the court recognized that Mother was a fit parent, and that as a fit parent,

17

Mother was exercising "her right as a parent to make decisions concerning the custody, care[,] and control of her children . . . ." *Id.* Yet, Mother's decision was not to eliminate visitation but to limit it. As a result of this series of errors, Mother, an undisputedly fit parent, made a decision to permit limited visitation, which was disregarded. This was clear error in light of our historic deference to the decisions made by fit parents regarding the upbringing of their children.

The majority contends that it is "not dispositive whether the trial court erred in concluding that Mother opposed any and all court-ordered visitation." Slip op. at 8. Their reasoning continues that there is other evidence besides Mother's alleged opposition to visitation that supports the trial court's conclusion that no visitation is in the best interest of the children, and on that basis, they conclude that this court must affirm. I disagree because to do so renders meaningless our case law that holds that a trial court must give consideration to a fit parent's decision to allow grandparent visitation.

It is well settled that when determining a child's best interest under Indiana's Grandparent Visitation Statute, courts are to presume that a fit parent's decision is in the child's best interest. *Crafton v. Gibson*, 752 N.E.2d 78, 96 (Ind. Ct. App. 2001) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). When a parent agrees to some visitation, a trial court should afford some weight to that fact. *Id.* at 97. Here, Mother clearly stated that she did not oppose limited visitation between Grandmother and the children. *See* Tr. p. 34, 40, 47. Because Mother is a fit parent, the trial court was to presume that this decision was in the children's best interest. Grandmother did not receive the benefit of that presumption;

18

instead, the trial court gave special weight to the erroneous conclusion that Mother opposed all visitation.

I understand the majority's position that we give substantial deference to a trial court's discretion in family-law matters. But the trial court does not have the discretion to be wrong, and here the court was clearly wrong regarding a pivotal finding, which it then gave special weight to in eliminating Grandmother's visitation completely. If we ignore this error as irrelevant, then we throw out the concept that a fit parent's decision is entitled to special weight by the trial court in making grandparent-visitation decisions. I am not willing to do that.

Grandparents do not have a constitutionally recognized interest in visiting with their grandchildren. *In re Visitation of C.L.H.*, 908 N.E.2d 320, 327 (Ind. Ct. App. 2009) (citing *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999)). However, our legislature recognized in drafting our Grandparent Visitation Statute that a child's best interest is often served by developing and continuing contact with his or her grandparents. *Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004) (citing *Swartz*, 720 N.E.2d at 1221). "Grandparents are members of the extended family whom society recognizes as playing an important role in the lives of their grandchildren, the importance of which has been given added meaning by the legislature's policy judgment underlying the Act." *Id.* A parent's decision regarding visitation, cloaked with the presumption of appropriateness, should be further protected when that decision allows visitation and fosters the relationship between grandparent and grandchild.

19

We are a court of review that reviews errors. A fair reading of this record shows an error. Because the trial court erred in making a finding that our court has determined deserves weight, I would reverse the order and remand to the trial court for the court to reweigh the evidence submitted at the hearing. In doing so, the trial court must give weight to Mother's decision to allow visitation.[7]

---

[7] We note Mother's position on appeal that the trial court did not err. Protracted legal battles that reach the appellate level often result in changed minds. Nonetheless, at the hearing, Mother clearly stated that she would permit visitation, and we cannot allow the legal system to be an impediment to the relationship between Grandmother and her grandchildren. Furthermore, Mother's claim now that she will in the future allow visitation without a court order is gratuitous.