**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**KENDRA G. GJERDINGEN**
Bloomington, Indiana

ATTORNEY FOR APPELLEES:

**JAN BARTEAU BERG**
Indianapolis, Indiana



FILED
Feb 22 2013, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SHAWN M. NICOSIN, Father,  )
                           )
   Appellant-Respondent,   )
                           )
vs.                        )   No. 11A01-1207-MI-308
                           )
WILLIAM J. MESAEH and       )
LORETTA D. MESAEH, Grandparents,  )
                           )
   Appellees-Petitioners.  )

APPEAL FROM THE CLAY SUPERIOR COURT
The Honorable Charles D. Bridges, Special Judge
Cause No. 11D01-1111-MI-759

**February 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Shawn M. Nicosin (Father) appeals the trial court's decision to grant visitation of his daughter, G.N., with her maternal grandparents, William and Loretta Mesaeh (Grandparents). He presents several issues for our review, one of which we find dispositive: whether the trial court's findings of fact and conclusions of law are clearly erroneous. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Father and Christina (Mesaeh) Nicosin (Mother) married on August 3, 2001. G.N. was born on December 6, 2002. Mother was diagnosed with cancer in early 2003, and the family moved in with Grandparents in March 2003. Mother died in June 2005, and Father and G.N. moved out of Grandparents' home in late 2005.

After Mother's death, Grandparents visited frequently with G.N., often providing her care before and after school, attending church with her on Sundays, and having occasional overnight visits. Grandmother volunteered at G.N.'s school and often had lunch with her in the school cafeteria.

Sometime in 2010, Father decreased the amount of time G.N. was spending with Grandparents. He sometimes obtained alternate before and after school care, and he no longer allowed G.N. to stay overnight with Grandparents through the week, citing G.N.'s additional homework. However, he continued to allow G.N. to occasionally stay overnight with Grandparents.

On November 1, 2011, Grandparents petitioned for visitation. The trial court held a hearing on April 20, 2012, and on July 13, it issued findings of fact and conclusions of law

2

granting visitation.

## DISCUSSION AND DECISION

We give substantial deference to trial courts in family law matters, and review a trial court's decision regarding grandparent visitation for clear error. *Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012). When, as here, the trial court makes findings:

> [W]e first determine whether the evidence supports the findings and then whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence to support the findings or the findings fail to support the judgment. We do not reweigh the evidence or determine witness credibility. Rather, we consider only the evidence most favorable to the trial court's judgment, with all reasonable inferences drawn in favor of the judgment.

*Megyese v. Woods*, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004) (quotations and citations omitted). However, we review conclusions of law *de novo* and owe no deference to the trial court's determination of such questions. *Mueller v. Karns*, 873 N.E.2d 652, 657 (Ind. Ct. App. 2007), *reh'g denied*.

A grandparent may seek visitation rights if the child's parent is deceased. Ind. Code § 35-17-5-1(a)(1). The trial court may "grant visitation rights if the court determines that visitation rights are in the best interests of the child." Ind. Code § 31-17-5-2(a). Whether visitation is in the best interests of the child is a matter for the trial court's discretion, and is reversible only on a showing of an abuse of that discretion. *Hoeing v. Williams*, 880 N.E.2d 1217, 1221 (Ind. Ct. App. 2008). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial

3

court or the reasonable, probable deductions to be drawn therefrom." *Id.* (citation omitted).

In deciding whether to grant or deny grandparent visitation, the trial court should set forth findings and conclusions that address:

> (1) the presumption that a fit parent acts in his or her child's best interests; (2) the special weight that must be given to a fit parent's decision to deny or limit visitation; (3) whether the grandparent has established that visitation is in the child's best interests; and (4) whether the parent has denied visitation or has simply limited visitation.

*In re Guardianship of A.L.C.*, 902 N.E.2d 343, 356 (Ind. Ct. App. 2009). Because the trial court herein deviated from the requirements established in *A.L.C.*, we hold the trial court erred in granting Grandparents' petition for visitation with G.N..

> Regarding Grandparents' access to G.N., the trial court found:

> 9. The Court finds that during [G.N's] early life, before [G.N.'s] mother died, [Grandparents] were an ever[-]present source of nurturing and love, ultimately exemplified by [Grandparents] literally taking in the entire [N.] family for multiple months both before and after their daughter's death.

> 10. After [Father] removed himself and [G.N.] from [Grandparents'] family home, approximately six (6) months after [Mother's] death, testimony revealed that initially [Grandparents] would continue to see [G.N.] on a regular basis, including two (2) to three (3) nights a week and on Sundays where [G.N.] would go to church with [Grandparents]. [Grandparents] testified that [G.N.] "loves us very much".

> * * *

> 12. Ultimately, as testimony revealed, [Father] substantially decreased visitation times with [Grandparents] and in order to respect [Father's] wishes, [Grandmother], who was asked by the teacher to continue volunteering in [G.N.'s] school, declined to volunteer after the second grade year and, generally, stayed away from [G.N.'s] school at the request of [Father].

> * * *

4

14. Evidence revealed that after [Father] became romantically involved with another young lady, [Grandparents'] visitation with their grandchild substantially decreased. . . .

15. After [Father] and [G.N.] moved out of [Grandparents'] home, [Father] continued to allow [Grandmother] to provide some form of pre-school and post-school daycare in that [Father] would drop [G.N.] off approximately at 6:00 o'clock in the morning; [Grandmother] would put [G.N.] to bed until 7:00 o'clock and get her to school by 8:00 o'clock a.m. After school, [Grandmother] was allowed to pick [G.N.] up at school at 2:30 p.m. and [Father] would get off work at 3:00 o'clock and pick her up at approximately 3:30 p.m. At some point during this period of time, [Grandfather] advised [Father] that he is not able to see his granddaughter due to his work schedule during the day that takes him away from home prior to [G.N.] coming at 6:00 a.m. and after [G.N.] leaving at 3:30 p.m., to which [Father] advised [Grandfather] "too bad; my father works too." In effect, [Grandfather] was given very little opportunity to see his granddaughter – much less than the minimal opportunity [Grandmother] was granted.

16. [Father] testified that he attempted to provide [an] equal amount of visitation rights for his own parents as compared to [Grandparents]. However, the Court finds that unlike [Grandparents], the paternal grandparents could, by the witnesses' own admission[s], come and go at will into [Father's] home and that [Father] regularly came and went into the paternal grandparents' homes. The court does not believe that there were equal amounts of visitation time granted to [Grandparents] as compared to the paternal grandparents.

\* \* \*

21. The Court finds that due to [Mother's] death, [Grandparents] have been denied reasonable visitation as grandparents, especially considering their loving history with the beloved grandchild herein.

22. The Court finds that in considering the long, loving history of [Grandparents'] involvement in [G.N.'s] life, it is in [G.N.'s] best interests that [Grandparents] be provided court-ordered visitation rights, as they have rebutted the presumption that a fit parent makes decisions regarding grandparent visitation in the best interests of the child. The Court finds that one (1) overnight every two (2) months provided as Father is "able" as requested by Father is not in [G.N.'s] best interests. By [Father's] own admission, his proposal would be only six (6) overnights a year "if he is able" to provide same. There is minimal certainty to even his proposal. Further, his

proposal of pre-school or after-school daycare is "minimal" at best and in total deprivation of [Grandfather's] rights in that [Grandfather] is not even home during those hours, and thus would not be able to see his granddaughter at all.

(App. at 7-9.)  Based on the findings, the trial court concluded:

6.  Our courts presume that a fit parent acts in his child's best interests; therefore, a trial court must give special weight to a fit parent's decision regarding non-parental visitation. The Act does not presume that grandparent visitation is necessarily in the children's best interests.  Instead the burden is on the grandparent, as the petitioning party, to demonstrate by a preponderance of the evidence that court[-]ordered visitation is in the children's best interests. If such a showing is made, it falls to the Court to evaluate the evidence, assess the circumstances, and carefully devise a visitation schedule that is in the children's best interests. *McCune v. Frey*, 783 N.E.2d 752, 2003 Ind. App. LEXIS 221 (2003).  Even though a trial court is required to give special weight to the decision of a fit parent regarding grandparent visitation with his child, this is a rebuttable presumption, and the petitioning grandparents bear the burden of rebutting it. *Crafton v. Gibson*, 752 N.E.2d 78, 96-97 (Ind. Ct. App. 2001).  The Court believes [Grandparents] have rebutted the presumption herein in that, due to their deep involvement in [G.N.'s] life, it falls to this Court to determine the result of different interests at stake in this case where the parties cannot agree to the terms of visitation as opposed to cases where no access has been allowed, those interests being the right to have a relationship with a child versus a disagreement concerning how much access is appropriate. *Swartz v. Swartz*, 720 N.E.2d 1219, 1222 (Ind. Ct. App. 1999).

(*Id.* at 11.)

In *Swartz,* a panel of our court reversed the trial court's decision to grant grandparent visitation pursuant to the Grandparents Visitation Act:

In this case, the trial court awarded visitation on alternating weekends, fashioning a phase-in period of day-long visitation, then increasing to overnight visitation.  The adoption of this schedule means that C.S. will be living among four different households on alternating weekends.  This arrangement runs counter to the goal of providing C.S. with the stability or "supplementary" family support for which Grandparent Visitation was designed.  Further, because of the visitation schedule of alternating weekends, the trial court's order prohibited Mother from involving C.S. in any activities that would take place on Grandparents' weekends without first consulting with

6

and receiving permission from them. The effect of this order is to allow three people to have a veto power over all continuing weekend activities in which C.S. might participate, a decision which would normally be left to Mother. In addition to alternating weekends, each grandparent was awarded one week of visitation during the summer. Therefore, in total, C.S., a nine-year-old girl, would live outside of her Mother's home seventy-three days per year. This arrangement would fundamentally alter the relationship between Mother and C.S., which by all accounts was close, healthy, and loving. The trial court abused its discretion in awarding such substantial visitation to the paternal grandparents. This schedule, akin to that devised for non-custodial parents, has C.S. being shuttled among households and outside of Mother's care for a substantial period of time. This visitation is complicated by the possibility that Father may also exercise his visitation rights at any time. We commend Grandparents for taking such a keen interest in C.S.'s welfare and appreciate C.S.'s good fortune in having so many people care about her. However, we cannot agree that this disruptive schedule, which includes so many people and households, is in C.S.'s best interests.

Our conclusion in this case is bolstered by the fact that Mother has never denied Grandparents access to C.S., and all parties have had a good relationship. While we agree that the Act applies in such cases, we note that the interest at stake is different. Here, the Grandparents are not pursuing the right to have a relationship with C.S., but the right to have the type of visitation they want. In essence, they were not satisfied with the terms of the visitation dictated by Mother, C.S.'s parent. In fact, Mother agreed to allow Grandparents unlimited, unsupervised visitation. Grandparents, however, pressed for the right to have C.S. spend the night in their homes, against Mother's wishes. We do not believe that this provides a more meaningful opportunity to visit with C.S. than Mother's proposal of open, unsupervised access to C.S. or that pursuing the issue, rather than working with an apparently agreeable Mother, was in C.S.'s best interest. The trial court abused its discretion in determining that Grandparents were entitled to regular, overnight visitation. Grandparents have essentially been given the visitation rights of [a] parent in lieu of their son and grandson, Father, with no corresponding duties. The trial court abused its discretion in setting visitation.

*Swartz*, 720 N.E.2d at 1222-23.

The same rationale applies in the instant case. Father never denied Grandparents access to G.N.; instead he, over time, limited the frequency with which Grandparents saw

7

G.N. During the hearing, he testified he did not let G.N. visit with Grandparents as much through the week because she had more homework. Father offered to allow Grandparents to participate in G.N.'s before and after school care, and to stay overnight with Grandparents one night every two months. Like *Swartz*, this is not a case where a parent is completely denying access such that Grandparents could not maintain a relationship with G.N.

Further, in making its conclusions of law, the trial court misapplied *Swartz*. The trial court stated, "it falls to this Court to determine the result of different interests at stake in this case where the parties cannot agree to the terms of visitation as opposed to cases where no access has been allowed[.]" (App. at 11.) *Swartz* holds the opposite – that trial courts should not be involved in the determination of visitation when the issue is not the denial of access to the child but instead the grandparents' desire to "have the type of visitation they want." *Swartz*, 720 N.E.2d at 1222.

While we commend Grandparents on their desire to have a close, meaningful relationship with G.N., they must defer to Father, who has a constitutional right to direct G.N.'s upbringing. Father has not denied Grandparents access to G.N., and he has proposed a schedule of visitation. As the trial court's conclusion that court-ordered visitation was warranted relied on an erroneous interpretation of Swartz, we hold it abused its discretion when it granted Grandparents visitation with G.N. Accordingly, we reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, C.J., and PYLE, J., concur.