**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**CHRISTOPHER C. CRAWFORD**
Elkhart, Indiana

ATTORNEY FOR APPELLEES:

**THEORA OHANESON**
Graber Law Firm, P.C.
Middlebury, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JEFF ROLSTON and JANA ROLSTON, ) | |
| ) | |
| Appellants-Plaintiffs, ) | |
| ) | |
| vs. ) | No. 20A04-1209-CC-489 |
| ) | |
| BRAD'S REALTY AND PROPERTY ) | |
| MANAGEMENT, LLC, and DAN L. ) | |
| BRADBURY, ) | |
| ) | |
| Appellees-Defendants. ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable David C. Bonfiglio, Judge
The Honorable Dean O. Burton, Magistrate
Cause No. 20D06-1001-CC-63

**April 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Appellants/Cross-Appellees/Plaintiffs Jeff and Jana Rolston (collectively, "the Rolstons"), who unsuccessfully sued Appellees/Cross-Appellants/Defendants Brad's Realty and Property Management ("Brad's Realty") and Dan Bradbury ("Bradbury") (collectively, "Brad's Realty") for fraud, appeal the denial of a motion to correct error. Brad's Realty cross-appeals the denial of a separate motion to correct error that challenged the denial of a motion for attorney's fees. We affirm.

**Issues**

The Rolstons present the issue of whether the judgment on the fraud claim is contrary to law.

Brad's Realty presents the issue of whether it is entitled to attorney's fees because the Rolstons pursued frivolous litigation.

**Facts and Procedural History**

The instant litigation stems from a failure to communicate. Brad's Realty offered three adjoining lots (one improved with a house) for sale. The Rolstons, through their realtor, offered a sum with the apparent belief that it was a lower-end offer for all three lots. The seller accepted the offer and arranged to convey two lots; the title company prepared documentation for the purchase of two lots. The thwarted expectation became plain to the Rolstons only after the sale.

The Summers family owned ten acres in Goshen, Indiana. Alvie Summers died, leaving the ten acres as part of his estate (excluding an unimproved lot owned by his son

2

Curtis Summers ("Curtis") and an improved lot owned by his daughter Charlene Smith ("Charlene"). Curtis decided to offer his lot for sale and he and his sister, as personal representatives of their father's estate, decided to offer the estate property (with a house thereon) for sale. Charlene's lot and house were not listed for sale.

On April 15, 2009, Brad's Realty published an MLS listing for property identified as "57605 CR 27." (Pl. Ex. A.) A listing price of $95,000 appeared at the top of the first page of the form; however, the "Public Remarks" section advised:

> This property can be sold as one piece, or separately. Home needs TLC, but is a great deal! With a gas fireplace to keep you warm and cozy on cool days and evenings, to the enormous amount of space for privacy, what more can you ask for? (4.49 acres only $45,000.) (3.55 acres plus home $65,000.) (1.08 acres only $25,000.) This home may need a new above ground septic, well, and up dated electric.

(Pl. Ex. A, pg. 1.) The lot/acreage description indicated "3 – 10.99 Acres."[1] (Pl. Ex. A, pg. 1.) The short legal description was "NE NW SW EX 1.108A SEC 14 7.804A." (Pl. Ex. A, pg. 1.)

The second page of the MLS listing indicated that "Vacant Land" of 4.49 acres (with a legal description of NE NW SW EX 1.088A [sic] EX 1.08A SEC 14 7.804A) was offered at 57605 CR 27 for the list price of $45,000.00 and the "Public Remarks" section advised: "Can be bought with additional 3.55 acres plus house for only $95,000. See MLS # 9921272. If sold separately, the house and land (3.55 acres) will be $65,000." (Pl. Ex. A, pg. 2.) The third page of the MLS listing indicated that "Vacant Land" of 1.108 acres (with a legal description of 155 X 7 X 310.8 – 1346.03 FT E & 2654.87 S NW COR SEC 14

---

[1] The previously described acreage (4.49, 3.55, and 1.08) equals 9.12.

3

1.108A) was offered at the separate address of 57000 CR 27 for the list price of $25,000.00 and the "Public Remarks" section stated: "Nice lot in Jefferson Township, Middlebury School District." (Pl. Ex. A, pg. 3.) The fourth page consisted of a drawing showing Parcels A and B. Parcel A included a lot marked "Summers" outlined in heavy black marker. Parcel B included a lot marked "Smith" outlined with a fine black line on three sides.[2]

In response to a separate on-line listing for the house at 57605 CR 27, the Rolstons visited the site.[3] There, they saw three "For Sale" signs and observed that stakes had been placed to divide lots. In front of the house, there was an information box containing the printed MLS listing. The Rolstons reviewed the listing, toured the house, and formed the opinion that it had termite damage and needed to be "gutted and completely redone." (Tr. 30.) However, the Rolstons instructed their realtor, Tracy Maurer-Jones ("Jones") to draft a purchase agreement.

According to the Rolstons, they thought they were arranging the purchase of three lots. On August 1, 2009, the Rolstons offered $80,000.00 for "the property known as 57605 CR 27 in Jefferson Township, Elkhart County, Goshen, Indiana." (Pl. Ex. 2.) The purchase agreement listed the acreage as 7.804 acres[4] and recited the legal description from the first page of the printed MLS listing (identifying one exclusion from a ten-acre parcel). After a

---

[2] On this lot sat a house belonging to Charlene. The Rolstons were admittedly aware that her house and land were not for sale.

[3] Jeff Rolston testified to his recollection that the house was listed for $65,000.00, but also testified that it "could have been" $95,000.00. (Tr. 51.)

[4] This is less than the aggregate 8.04 noted on the MLS listing (4.49 for Parcel A and 3.55 for Parcel B).

counter-offer of $86,000.00, the parties agreed upon a purchase price of $84,000.00. The Rolstons declined to order a survey.

On July 30, 2009, Charlene and Curtis, as the personal representatives of the Estate of Alvie W. Summers, conveyed to the Rolstons 7.804 acres consisting of the following described property:

> The Northeast Quarter (NE ¼) of the Northwest Quarter (NW ¼) of the Southwest Quarter (SW ¼) of Section Fourteen (14), Township Thirty-seven (37) North, Range Six (6) East, containing Ten (10) acres, Elkhart County, Indiana, more or less.
>
> LESS AND EXCEPTING THE FOLLOWING:
>
> A part of the West half of Section 14, township 37 North, Range 6 East, Elkhart County, Indiana, more particularly described as follows:
>
> Commencing at a spike nail in the center line of State Highway Number 20, said spike nail marking the Northwest corner of said Section 14; thence due East along the North line of Section 14 and the center line of U.S. Highway Number 20, a distance of 1346.03 feet to a point in the intersection of U.S. Highway Number 20 and County Road Number 27; thence South Zero degrees 56 minutes West, 3026.27 feet to the place of beginning of this description; thence continuing along the center line of County Road Number 27 and said described bearing 153 feet; thence North 89 degrees 4 minutes West 310 feet; thence North Zero degrees 56 minutes East 153 feet; thence South 89 degrees 4 minutes East, 310 feet to the place of beginning of this description. Said above tract contains 1.088 acres of land, excepting that part used as legal public highways.
>
> ALSO EXCEPTING:
>
> A part of the West Half of Section 14, Township 37 North, Range 6 East, more particularly described as follows:
>
> Commencing at a spike nail in the center line of State Highway No. 20, said spike nail marking the Northwest corner of Section 14, Township 37 North, Range 6 East; thence due East along the North line of Section 14 and the center line of U.S. Highway No. 20, 1346.03 feet to the point of intersection of

U.S. Highway No. 20 and County Road No. 27; thence South Zero degrees 56 minutes West, 2654.87 feet to the place of beginning of this description; thence continuing along said described bearing 155.7 feet; thence South 89 degrees 36 minutes West, 310.08 feet; thence North Zero degrees 56 minutes East, 155.7 feet; thence North 89 degrees 36 minutes East, 310.08 feet to the place of beginning of this description, said tract containing 1.108 acres, more or less.

(Def. Ex. I.) Jones, who had received documents two days before the closing, failed to observe that there were two exclusions from the ten acres. Stewart Title did not notify her that the legal description in the purchase agreement (reciting a single exclusion) was changed to reflect two exclusions.

At some point during the closing, Jana Rolston questioned the lack of multiple tax identification numbers. Jones left the room to question Bradbury, who was waiting in the lobby. After Jones returned and reassured the Rolstons that the county still considered the land at issue to be one parcel and thus had not assigned multiple tax identification numbers to the lots, the closing proceeded.

Shortly after the closing, Jeff instructed Jones to list the two unimproved lots for sale. However, as the days passed and the Rolstons began to remodel their house, they discovered that a "For Sale" sign remained posted at the northern 1.108 acre lot. Jones contacted Bradbury and was advised that the lot at 57000 CR 27 was owned by Curtis, it had not been conveyed to the Rolstons, and it was still offered for sale.

The Rolstons filed suit, bringing a negligence claim against Jones and Stewart Title Services and a fraud claim against Brad's Realty. The Rolstons did not seek rescission, and proceeded with renovation of the house.

6

Jones settled with the Rolstons and was dismissed as a party; Stewart Title Services was granted summary judgment on the negligence claim. The remaining parties proceeded to trial upon the fraud claim. At the conclusion of a bench trial, judgment was entered in favor of Brad's Realty. Brad's Realty then claimed entitlement to attorney's fees; the trial court denied the attorney's fees request.

The parties filed respective motions to correct error, and the trial court denied both motions. This appeal ensued, with the parties filing respective notices of appeal.

**Discussion and Decision**

I.  Fraud Claim

We review the grant or denial of a motion to correct error for an abuse of discretion. Williamson v. Williamson, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005). In their motion to correct error, the Rolstons claimed that they had established their fraud claim against Brad's Realty despite the trial court's judgment to the contrary.

The essential elements of actual fraud are a false material misrepresentation of past or existing facts, made with knowledge or reckless ignorance of the falsity, which causes reliance to the detriment of one who relies on the representation. Ohio Farmers Ins. Co. v. Ind. Drywall & Acoustics, Inc., 970 N.E.2d 674, 683 (Ind. Ct. App. 2012), trans. denied. The burden of proving the elements of fraud rests on the party alleging it. Id.[5]

---

[5] Brad's Realty suggests that we decline to review the Rolstons' claim that they established fraud because the Rolstons failed to allege fraud with specificity in their Second Amended Complaint. Indiana Trial Rule 9(B) requires that averments of fraud must be pled with specificity as to the "circumstances constituting fraud." In order to meet this burden, the party who alleges fraud must specifically allege the elements of fraud, the time, place, and substance of false reports, and any facts that were misrepresented, as well as the identity of what was procured by fraud. Payday Today, Inc. v. Hamilton, 911 N.E.2d 26, 33 (Ind. Ct. App. 2009), trans. denied.

7

The trial court entered judgment for Brad's Realty. It did so upon concluding that the Rolstons had failed to meet their burden of proof because the MLS listing, while confusing, was not drafted with intent to defraud and because due diligence on the part of the Rolstons' realtor would have revealed the extent of the land conveyance. Accordingly, the Rolstons appeal from a motion to correct error challenging a negative judgment and must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law. Wilder-Newland v. Kessinger, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), trans. denied. "This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions for clear error only." Id.

The existence of intent to deceive, or "scienter," is a question for the finder of fact. Wright v. Pennamped, 657 N.E.2d 1223, 1232 (Ind. Ct. App. 1995), trans. denied. Bradbury testified that he had no intent to defraud; rather, he drafted a less-than-perfect MLS listing, in part relying upon county records of acreage. Additionally, he testified that he had told Jones that Curtis' property was separate. The trial court declined to credit Jones's testimony that she had specifically asked about three lots at the closing, and we will not invade the province of the fact-finder.

The trial court also found that, even assuming a material misrepresentation, there was a lack of detrimental reliance. Detrimental reliance is one of the essential elements for fraud.

---

These requirements extend to all actions that "sound in fraud." Id. However, Brad's Realty did not move to dismiss the complaint for lack of specificity but rather defended itself against the apparent contentions. That is, the Rolstons claimed that the MLS listing was so misleading as to constitute a false material misrepresentation and that the misrepresentation was intentionally not corrected during conversations between the realtors.

8

Craig v. ERA Mark Five Realtors, 509 N.E.2d 1144, 1147 (Ind. Ct. App. 1987). Gary Decker ("Decker"), a real estate agent and teacher, testified as an expert witness for the Rolstons. According to Decker, Bradbury made a "major error" in failing to disclose on the MLS listing that there were in fact two sellers; nonetheless, he opined that a realtor checking the tax records would have discovered the ownership of the land at issue. (Tr. 160.) Two different MLS listing numbers appeared on the four-page MLS listing. The closing documents indicated that two lots, as opposed to one, were excluded from the ten-acre parcel. Jones admitted that she had failed to note the second exclusion although she had closing documents in her possession for two days. Jeff Rolston testified that he was represented by Jones in the real estate transaction and relied upon her when she advised they "were getting all three lots." (Tr. 240.) He conceded that he did not communicate directly with Bradbury. The testimony and documentary evidence support the trial court's conclusion that there was no detrimental reliance upon Brad's Realty, as required to establish a claim for fraud.

The Rolstons have failed to show that the evidence pointed solely to a conclusion contrary to that reached by the trial court.

## II. Attorney's Fees

Brad's Realty contends that the trial court erred in refusing to order the Rolstons to pay attorney's fees. Generally, Indiana follows the "American Rule" under which parties pay their own attorney's fees unless an agreement between the parties, a statute, or other rule provides otherwise. Smyth v. Hester, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009) (citations omitted), trans. denied. However, Indiana Code Section 34-52-1-1(b) provides that a court

9

"may award attorney's fees as part of the cost … if the court finds that either party" brought the action on a claim that is "frivolous, unreasonable, or groundless"; persisted in litigation even after that claim "clearly became frivolous, unreasonable, or groundless;" or litigated in bad faith. The trial court recognized there was a state of confusion surrounding the real estate transaction, as opposed to fraud, but ultimately concluded that a statutory award of attorney's fees was not appropriate.

A claim or defense is "frivolous" if it is taken primarily for the purpose of harassment, if the attorney is unable to make a good faith and rational argument on the merits of the action, or if the lawyer is unable to support the action taken by a good faith and rational argument for an extension, modification, or reversal of existing law. Kahn v. Cundiff, 533 N.E.2d 164, 167 (Ind. Ct. App. 1989), aff'd, 543 N.E.2d 627 (Ind. 1989). A claim or defense is "unreasonable" if, based on the totality of the circumstances, including the law and the facts known at the time of filing, no reasonable attorney would consider that the claim or defense was worthy of litigation. A claim or defense is "groundless" if no facts exist which support the legal claim presented by the losing party. Id. at 170-71.

A claim or defense is not groundless or frivolous merely because the party loses on the merits. Smyth, 901 N.E.2d at 33. Here, in denying the motion to dismiss and motion for summary judgment filed by Brad's Realty, the trial court found that genuine issues of material fact existed as to the communication between Jones and Bradbury at the closing. As such, the reasonableness of the Rolstons' claim could not have been adequately discerned by a reasonable attorney absent the development of a factual record.

When the evidentiary record was developed, there was ample evidence of less than optimal business practices on all sides. Bradbury drafted a single MLS listing despite the existence of multiple owners. It was replete with error and potential for misleading a prospective buyer. The Rolstons declined a survey and failed to read the closing documents thoroughly. Jones made no check of county property records, failed to appreciate the differences between the purchase agreement she had drafted and the closing documents, and – when questioned at closing – still failed to ascertain what lots comprised the 7.804 acres conveyed. With mistakes on all sides, the ultimate question was whether there was fraudulent intent to deceive. It was a question appropriate for resolution by the fact-finder.

Brad's Realty has not persuaded us that it is entitled to attorney's fees for bad faith litigation.

## Conclusion

The judgment denying the Rolstons recovery for fraud is not contrary to law. Nor is the refusal of the trial court to order the Rolstons to pay attorney's fees erroneous. The denial of the respective motions to correct error was therefore not an abuse of discretion.

Affirmed.

NAJAM, J., and BARNES, J., concur.

11