**INDIANAPOLIS POWER & LIGHT COMPANY, and J.A. House, Inc., Appellants (Third–Party Plaintiffs Below),**

v.

**BRAD SNODGRASS, INC., a/k/a Snodgrass Sheet Metal, Appellee (Third–Party Defendant Below).**

No. 30S02–9110–CV–782.

Supreme Court of Indiana.

Oct. 3, 1991.

Kent O. Stewart, Charles F. Miller, Jr., Stewart Due Miller & Pugh, Indianapolis, for appellant IPL.

James K. Wheeler, Jeffrey O. Meunier, Coots Henke & Wheeler, Carmel, for appellant House.

Lloyd H. Milliken, Jr., Locke Reynolds Boyd & Weisell, Indianapolis, for appellee Snodgrass.

DICKSON, Justice.

Should the Indiana Comparative Fault Act, Ind.Code § 34–4–33–1 to –13, be judicially expanded to create a new species of vicarious liability and resulting indemnity rights? We grant transfer to consider this novel question.

On January 24, 1986, a construction accident resulted in injuries to Billie J. Gillespie, an employee of Brad Snodgrass, Inc., also known as Snodgrass Sheet Metal (Snodgrass), a subcontractor for J.A. House, Inc. (House), the general mechanical contractor in a project for Indianapolis Power & Light Company, Inc., (IPL), owner of the premises under renovation. Gillespie and his wife brought a damage action against IPL and House, alleging injuries proximately caused by the negligence of IPL and House, but not asserting any claim for vicarious liability against IPL or House resulting from any conduct of Snodgrass. IPL and House then initiated third-party actions against Snodgrass, seeking contractual and common law indemnification for any liability imposed on them because of negligence of Snodgrass.

The trial court granted summary judgment for Snodgrass and against IPL and House. The Court of Appeals reversed. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.* (1990), Ind.App., 548 N.E.2d 1197.

Of the two contractual indemnification claims asserted as Counts I and II in the parallel third-party claims of IPL and House, the first is based on the following provision in the contract between House and Snodgrass:

Indemnity Agreement: The Subcontractor [Snodgrass] covenants to indemnify and save harmless and exonerate the Contractor [House] and the Owner [IPL] of and from all liability, claims and demands for bodily injury and property damage arising out of the work undertaken by the Subcontractor, its employees, agents or its subcontractors, and arising out of any other operation no matter by whom performed for and on behalf of the Subcontractor, whether or not due in whole or in part to the conditions, acts or omissions done or permitted by the Contractor or Owner.

The second contractual indemnification claim arises from language in the job specifications which required each contractor and subcontractor to:

indemnify, defend and save harmless the Owner ... against all suits, actions and claims of any character, name and description ... brought for or on account of any injuries or damages received or sustained by any person, persons or property, because of any act, omission, neglect or misconduct of the Contractor, a Subcontractor or anyone directly or indirectly employed by them, arising from, incident to or connected with the Work....

█ The rule in this state is that parties may by express contract lawfully bind themselves to indemnify against future acts of negligence, *American States Ins. Co. v. Williams* (1972), 151 Ind.App. 99, 278 N.E.2d 295; *McClish v. Niagara Machine & Tool Works* (S.D Ind.1967), 266 F.Supp. 987, except as to the sole negligence of the indemnitee, Ind.Code § 26–2–5–1.[1] Thus IPL and House may, by suffi-

---

1. Enacted in 1975, Ind.Code § 26–2–5–1 provides:

 All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which

purport to indemnify the promisee against liability for:
 (1) death or bodily injury to persons;
 (2) injury to property;
 (3) design defects; or
 (4) any other loss, damage or expense arising under either (1), (2) or (3);

cient express agreement, provide for indemnification as to liabilities imposed on them because of the sole negligence of Snodgrass or the concurrent negligence of Snodgrass and IPL or House. *See Progressive Construction and Engineering Co., Inc. v. Ind. & Mich. Elec. Co., Inc.* (1989), Ind.App., 533 N.E.2d 1279.

However, the contractual indemnity claims of IPL and House, as presented here, do not seek such conventional indemnification. Instead, they propose that a new form of indemnity be judicially engrafted upon the Indiana Comparative Fault Act. In rhetorical paragraphs 4 of their parallel Counts I and II for contractual indemnity, IPL and House assert their claims for indemnity "to the extent that such judgment represents damages proximately caused by the negligent acts or omissions of Snodgrass." However, the Gillespies' complaint against IPL and House does not allege any negligence of Snodgrass. It complains only of the conduct of IPL and House and does not seek to impute to them any negligence of Snodgrass. Furthermore, the third-party actions do not seek indemnification for damages proximately caused by concurrent negligence of both Snodgrass and IPL or House.

In its brief to this Court, IPL explains that it "seeks indemnity only for the vicarious liability IPL could absorb because of Snodgrass's negligence," and that "IPL's right of indemnity does not hinge upon the allegations of plaintiff's complaint, but rather arises as a natural by-product from the fault apportionment process." Brief of Appellant IPL in Opposition to Petition to Transfer at 14, 15. Similarly, House argues that it is seeking indemnity "only for the negligence of Snodgrass which may be chargeable to House ... because of the

fact that Snodgrass cannot be named as a "nonparty" under the Comparative Fault Act." Brief of Appellant House to the Court of Appeals at 13. In asserting their claims for contractual indemnity, IPL and House expressly seek not the conventional indemnification which may properly be provided for by contract. Rather, they seek only indemnification for that portion of damages which may be imposed upon them by reason of the fault allocation process under the Indiana Comparative Fault Act.[2] Because of the express limitations thus asserted in the contractual indemnity claims of IPL and House, Counts I and II of their third-party actions may survive summary judgment only if it is determined that a new indemnity right arises under the Act, as they allege.

In Count III of the third-party actions, both IPL and House assert a theory of implied indemnity at common law, claiming that the Indiana Comparative Fault Act should be construed to create a new implied indemnity right. Absent this argument, it is clear that under existing law the claims of IPL and House for common law indemnity would not be cognizable. The right to indemnity may be implied at common law only in favor of one whose liability to a third person is solely derivative or constructive, and only as against one who has by his wrongful act caused such derivative or constructive liability to be imposed upon the indemnitee. *Indiana State Highway Comm'n v. Thomas* (1976), 169 Ind.App. 13, 346 N.E.2d 252, 259; *McClish*, 266 F.Supp. 987. Absent an adequate express contract, a party seeking indemnification from another must be free of fault. *Elcona Homes Corp. v. McMillan Bloedell, Ltd.* (1985), Ind.App., 475 N.E.2d 713; *Coca–Cola Bottling Co.–Goshen v. Vendo Co.* (1983), Ind.App., 455

from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable.

**2.** This inference is also supported by IPL's argument that it "should not be penalized by losing its cause of action for indemnity simply because

IPL pursued only indemnification to the extent that IPL's liability for plaintiff's injuries is based on the fault of Snodgrass. Should this court determine that the correct application of I.C. 26–2–5–1 under the facts of this case permits IPL 100 percent indemnity ..., this court should remand this case with appropriate direction." Brief of Appellant IPL in Opposition to Petition to Transfer at 24–25.

N.E.2d 370. The Gillespies' complaint seeks to impose liability only for the direct negligence of IPL and/or House and not for any claim of imputed negligence from the conduct of Snodgrass. Therefore, any judgment against IPL or House would necessarily constitute a determination that they were not free from fault and thus not entitled to implied indemnity from Snodgrass under existing common law. To avoid this result, IPL and House urge judicial recognition of a new right of implied indemnity resulting from the comparative fault allocation process.

■ All of the claims asserted by IPL and House for both contractual and common law indemnification are based on the novel contention that due to trial procedures introduced by the Indiana Comparative Fault Act, there is a possibility that any resulting judgment for the Gillespies and against IPL or House may include damages attributable to "fault" which arguably might be assessed against Snodgrass except for the fact that Snodgrass, as Gillespie's employer, cannot be included in the apportionment of fault as a "nonparty" under the Act. Ind.Code § 34–4–33–2(a).[3] There can be no allocation of comparative fault to persons other than the parties or a designated nonparty. *Bowles v. Tatum* (1989), Ind., 546 N.E.2d 1188.

IPL and House contend, and the Court of Appeals accepted, that the consequences of fault allocation for which IPL and House here seek indemnification should henceforth be recognized and treated as if it were a variation of vicarious liability although distinct from that imposed under the rule of respondeat superior. *Snodgrass*, 548 N.E.2d at 1199. The fault allocation process introduced under the Act, however, does not change the origin or character of the liability which the Gillespies seek to impose upon IPL and House. It does not impose upon them any new or additional derivative or constructive liability for the acts of Snodgrass.

The opinion of the Court of Appeals misconstrues the role of apportionment of fault. The primary objective of the Act is not to achieve proportional liability but to modify the harsh common law rule of contributory negligence.

Furthermore, the nature of and procedures established by the Indiana Comparative Fault Act reveal that its primary function is to modify the common law rule of contributory negligence under which a plaintiff only slightly negligent was precluded from recovery of any damages, even as against a relatively highly culpable tortfeasor. In abrogating this harsh rule, the Act allows recovery but reduces such recovery in proportion to any fault of the plaintiff which contributed to the damages. The contributory negligence defense is partially retained as the Act also generally precludes any recovery to a plaintiff with more than 50 percent fault. In furtherance of these objectives, the Act establishes a mechanism by which the factfinder is required to specifically determine the relative degree of the plaintiff's fault with respect to others. *This proportional allocation of fault is the means by which the Act's objectives are reached, not the ends to which it aspires.*

*Bowles*, 546 N.E.2d at 1190 (emphasis supplied).

Erroneously imparting to the Act the goal of full and complete proportional allocation of fault, the Court of Appeals concluded that because IPL and House could be held liable for both their own fault and for a portion of an immune employer's fault, "[t]hus, vicarious liability *may* result from the apportionment process." *Snodgrass*, 548 N.E.2d at 1200 (emphasis in original). This is incorrect.

■ The Act does not state nor require that the fault allocation process creates a new species of vicarious liability. Nor does it expressly reject the well-estab-

---

**3.** The definitions in Ind.Code § 34–4–33–2(a) include the following:

"Nonparty" means a person who is, or may be, liable to the claimant in part or in whole for the damages claimed but who has not been joined in the action as a defendant by the claimant. A nonparty shall not include the employer of the claimant.

lished principle that Indiana law does not recognize an indemnity claim implied at common law in the absence of derivative or constructive liability. It is well settled that the legislature does not intend by a statute to make any change in the common law beyond what it declares either in express terms or by unmistakable implication. *N. Ind. Pub. Serv. Co. v. Citizens Action Coalition* (1989), Ind., 548 N.E.2d 153. As a statute in derogation of the existing common law, the Act must be strictly construed. *State Farm Fire & Casualty Co. v. Structo Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597; *Ind. State Highway Comm'n v. Morris* (1988), Ind., 528 N.E.2d 468; *Chicago & Erie R.R. Co. v. Luddington* (1910), 175 Ind. 35, 93 N.E. 273.

We agree with Snodgrass that, if left undisturbed, the decision of the Court of Appeals on this point would result in a radical change in Indiana tort practice. In almost every work-related accident, the employer of the injured party would be joined as a third-party defendant in a common law implied indemnity claim even absent an express contractual indemnity agreement.

We conclude that the law of indemnification is unchanged by the enactment of the Comparative Fault Act. Parties may continue to provide for lawful indemnification by express contract. However, the fault apportionment process under the Act does not give rise to vicarious liability and resulting indemnification rights.

Transfer is granted. The grant of summary judgment is affirmed. This cause is remanded to the trial court for further proceedings.

SHEPARD, C.J., and KRAHULIK, J., concur.

GIVAN, J., dissents without opinion.

DeBRULER, J., not participating.