John C. **BAILEY**, M.D., Commissioner, Indiana State Board of Health and Indiana State Board of Health, Appellants–Defendants,

v.

The **MANORS GROUP**,
Appellee–Plaintiff.

No. 29A05–9401–CV–6.

Court of Appeals of Indiana,
Fifth District.

Oct. 31, 1994.

Rehearing Denied Jan. 23, 1995.

Pamela Carter, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for appellants.

David F. McNamar, Alastair J. Warr, McNamar, Fearnow & McSharar, P.C., Indianapolis, for appellee.

## OPINION

RUCKER, Judge.

The Indiana State Board of Health appeals from a grant of partial summary judgment and judgment entered against it ordering the payment of monitoring fees to Manors Group. The Board presents the following restated issues for review: 1) whether the trial court erred in finding that Ind.Code § 16–10–4–19 did not preempt Manors Group's common law remedies; and 2) whether the evidence supports recovery under the theory of quasi-contract.

We affirm in part and reverse in part.

In March, 1990, amidst allegations of seriously deficient patient care at the Mayfair Manor (Mayfair) health facility, a survey team from the Board of Health's Division of Health Facilities (Board) commenced an investigation of the facility. The team, having quickly substantiated the allegations, alerted the Board that conditions at Mayfair posed an immediate and substantial threat to the health, welfare, and safety of Mayfair's residents. The Board determined that the situation warranted "fast track decertification" and initiated an action to revoke Mayfair's health facility license, or in the alternative to place the facility on probation and require employment of a monitor.[1] On March 9, 1990, the Board issued an Emergency Order for Placement of a Monitor. Using a list of monitors qualified for appointment, the Board telephoned Ginger L. Fitzpatrick through her employer, The Manors Group. Fitzpatrick, who was consulting elsewhere at the time, was informed by her office of the Board's request for monitoring services and immediately attended an emergency briefing with the Board. Fitzpatrick accepted the assignment and began the monitoring process at Mayfair the same day. From March 9, 1990 until April 21, 1990, Fitzpatrick monitored the facility, completing daily logs of her observations and recommendations and submitting weekly reports to the Board which documented the facility's progress. During the monitoring process, Fitzpatrick and Manors Group approached Mayfair's administration on several occasions in an attempt to execute a contract for payment for Fitzpatrick's time and services and eventually billed Mayfair in the sum of $12,556.50 for services rendered. Mayfair refused to enter into an agreement to compensate Fitzpatrick and subsequently filed for bankruptcy protection. Manors Group, which paid Fitzpatrick's fees during the time she served as a monitor, sued the Board under the theories of implied contract and *quantum meruit* to recover Fitzpatrick's monitoring expenses. The trial court granted partial summary judgment to Manors Group on the grounds that I.C. § 16–10–4–19(d) did not bar Manors Group from recovering damages under common law theories of liability. The matter then proceeded to a bench trial, after which the court entered judgment against the Board in the amount of $12,556.50. This appeal ensued in due course. Additional facts are discussed below where relevant.

## I.

The Board contends the trial court erred in granting partial summary judgment to Manors Group on the issue of whether I.C. § 16–10–4–19(d) operates to preempt common law theories of recovery. The trial court entered findings and conclusions in support of its judgment, noting that "[t]he statute provides one way in which a monitor may be paid. However, the State Board of Health or other state agencies may not avoid their responsibility to pay for services rendered under the auspices of I.C. 16–10–4–19(d)." *Record* at 80. A trial court's reasoning for entering summary judgment, although unnecessary, is helpful to the litigants and aids our review. *Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, *trans. denied.* However, we are not bound by the findings of the trial court and our standard of review is the same as it was for the trial

---

1. Monitors are licensed health facility administrators who:

    .    .    .    .    .

    (2) serve as a consultant to the [facility] administrator concerning the operation of the health facility; and

    (3) submit a written report to the [Board of Health] director on the operation of the health facility and the status and condition of the patients.

    I.C. § 16–10–4–19(c), repealed by P.L. 2–1993. Now see I.C. § 16–28–7–3.

court: whether there is a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Montgomery County Farm Bureau Co-op. Ass'n, Inc. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, *reh'g denied.* We must consider the pleadings and evidence sanctioned by Ind.Trial Rule 56(C) without deciding its weight or credibility. Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Houin v. Burger by Burger* (1992), Ind.App., 590 N.E.2d 593. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material fact must be resolved against the moving party. *Liberty Mutual Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, *trans. denied.*

■ At all relevant times, the costs provision of the monitoring statute provided as follows: "The costs of placing a monitor in a health facility ... shall be paid by the health facility unless it is determined by a final order under I.C. 4–21.5 that the placement of the monitor was not needed in which case the costs shall be reimbursed by the state." I.C. § 16–10–4–19(d).[2] According to the Board, the sole basis of liability against the state derives from improper appointment of a monitor, and thus Manors Group may not sustain a common law action to recover monitoring fees from the state.

■ Well-settled principles of statutory construction necessitate our disagreement with the Board that recovery under the statutory costs provision was Manors Group's exclusive remedy. The legislature is presumed to know the common law and to incorporate it into the statute except where it expressly indicates otherwise. *Masterman v. Veldman's Equipment, Inc.* (1988), Ind.App., 530 N.E.2d 312, 315, *trans. denied.* This rule is a corollary to the rule that statutes in derogation of the common law are to be strictly construed. *Id.; Bartrom v.*

*Adjustment Bureau, Inc.,* (1993), Ind., 618 N.E.2d 1, 10. We therefore presume that the legislature does not intend to make changes in the common law beyond what it declares either expressly or by unmistakable implication. *Indianapolis Power & Light Co. v. Brad Snodgrass, Inc.* (1991), Ind., 578 N.E.2d 669, 673; *Victory Comm. v. Genesis Conv. Ctr.* (1992), Ind.App., 597 N.E.2d 361, 365–66, *reh'g denied.*

■ Construing the monitoring statute in this manner, we find no indication that the statutory costs provision was intended to preempt common law claims against the state. Indeed, the Board does not designate, nor do we detect, a clearly manifested intent by the legislature to supplant common law theories of recovery. To the contrary, the statute's provision of one circumstance in which the state is liable for monitoring costs does not thereby relieve the state from the imposition of common law liability in other circumstances. Accordingly, the trial court did not err in granting partial summary judgment in favor of Manors Group.

## II.

■ The Board next contends that the trial court erred in granting final judgment in favor of Manors Group. According to the Board, the imposition of quasi-contractual liability is improper in the absence of a written contract between the Board and Manors Group. In support of this assertion, the Board cites various statutes dictating, among other things, that contracts to which State agencies are parties must be in writing. *See, e.g.,* I.C. §§ 4–13–2–14.2(a); 4–13–2–18(j). Notwithstanding these statutory provisions, the Board's argument must fail because the absence of an express contract does not preclude recovery under the theory of quasi-contract. To the contrary, quasi-contractual remedies permit recovery where no contract in fact exists. *Bayh v. Sonnenburg* (1991), Ind., 573 N.E.2d 398, 408, *cert. denied,* (1992), 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 415. We find no error here.

2. Indiana Code § 16–10–4–19 has been revised and recodified at I.C. §§ 16–28–7–1 to –5. The revised version of the costs provision mandates that the costs of placing a monitor in a health facility be borne by the state if the monitor is a state employee. I.C. §§ 16–28–7–4; 16–28–7–4.3.

The Board next argues that the judgment must nevertheless be reversed because the evidence is insufficient to support recovery under the theory of quasi-contract. When reviewing a claim of insufficient evidence, we consider only such evidence and reasonable inferences therefrom which would support the judgment. We neither reweigh the evidence nor judge the credibility of witnesses. If there is any probative evidence to support the judgment, it is the duty of this court to affirm. *Bradford v. Bentonville Farm Supply, Inc.* (1987), Ind.App., 510 N.E.2d 745.

Quasi-contracts or contracts implied-in-law can be created by the courts when there is no contract in a true sense but where justice warrants recovery as though there had been a promise. *Sonnenburg,* 573 N.E.2d at 408; *City of Indianapolis v. Twin Lakes Enters., Inc.* (1991), Ind.App., 568 N.E.2d 1073, 1078, *trans. denied.* That is, quasi-contracts do not arise from the parties' express agreement, but are implied by law in order to remedy wrongful enrichment of one party at the expense of another. *Hartke v. Moore–Langen Printing & Publishing Co., Inc.* (1984), Ind.App., 459 N.E.2d 430. To prevail on a quasi-contract claim, a plaintiff is usually required to establish that the defendant impliedly or expressly requested the benefits conferred. *Biggerstaff v. Vanderburgh Humane Soc., Inc.* (1983), Ind.App., 453 N.E.2d 363, 364. Further, it is well settled that one who labors without an expectation of payment cannot recover in quasi-contract. *Sonnenburg,* 573 N.E.2d at 408–09; *Biggerstaff,* 453 N.E.2d at 364.

Both parties to this action devote considerable time debating the issue of whether the monitoring services conferred a benefit on the Board which would support a finding of unjust enrichment. The Board denies requesting or receiving any measurable benefit from Fitzpatrick's monitoring, while Manors Group responds that because the Board's statutory mandate includes ensuring compliance with applicable health regulations,[3] Fitzpatrick's monitoring services directly aided the Board in fulfilling its duties. However, we need not resolve this issue because we find that the evidence fails to support another element of quasi-contract, namely: the existence of a subjective expectation of payment at the time services were performed. *See Sonnenburg,* 573 N.E.2d at 409. Although the issue of payment for Fitzpatrick's services was discussed at the pre-monitoring meeting between Fitzpatrick and the Board, the record is devoid of any indication that Fitzpatrick reasonably contemplated receiving such payment from the Board. Manors Group does not identify, nor does our examination of the record reveal, any pre-monitoring subjective expectation by Fitzpatrick of compensation from the Board.[4] Rather, the evidence suggests that discussion occurred only as to the ability and timeliness of Mayfair to compensate Fitzpatrick. Absent evidence that Fitzpatrick reasonably expected payment by the Board at the time she performed monitoring services, the requisite grounds for imposing quasi-contractual liability have not been satisfied. *Id.* We therefore reverse the trial court's award of damages to Manors Group.

The trial court's partial grant of summary judgment in favor of Manors Group is affirmed. The court's award of damages to Manors Group is reversed.

SHARPNACK, C.J., and CHEZEM, J., concur.

---

3. I.C. § 16–1–3–2, repealed by P.L. 2–1993. Now see I.C. § 16–19–3–1.

4. Manors Group's support of quasi-contractual liability is based principally upon Fitzpatrick's post-monitoring discussion with Robert Goodnow, director of the Board's Bureau of Quality Assurance. The record discloses that upon Mayfair's failure to render payment, Fitzpatrick conferred with Goodnow, who advised her to "send him copies of the bill and he would take it on to his superiors for review." *Record* at 147, 149. We observe that this exchange occurred after Fitzpatrick's monitoring activities were completed and thus fails to support the existence of a subjective expectation of compensation at the time services were rendered.