**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 23 2014, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL L. MUENICH**
Crown Point, Indiana

ATTORNEY FOR APPELLEE:

**FREDERICK L. CARPENTER**
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEIDEMARIE GARCIA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  45A03-1308-SC-317 |
| | ) | |
| COVER-RITE, INC., | ) | |
| | ) | |
| Appellee-Plaintiff, | ) | |
| | ) | |
| J.C. BUILDERS, INC. and SALVINO VERTA, | ) | |
| Interested Parties, | ) | |
| (Third party defendants). | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Sheila M. Moss, Judge
The Honorable Kathleen Belzeski, Magistrate
Cause No. 45D08-1201-SC-537

**September 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

This case is a reminder to pay attention to details and to read what you sign. Appellant/Defendant/Third-Party Plaintiff, Heidemarie Garcia ("Garcia")—who had entered into a construction contract with Appellee/Third-Party Defendant, J.C. Builders, Inc. ("J.C. Builders") and had a $4,600.00 flooring allowance as part of her construction contract—went to the flooring business of Appellee/Plaintiff, Cover-Rite, Inc. ("Cover-Rite"), where she picked out $6,845.00 worth of flooring for her house, paid for the amount that exceeded her flooring allowance, and signed a contract with Cover-Rite in which she agreed to pay the "reasonable cost" and "charges" if it became "necessary to proceed in law to collect any amount due" under the contract. At the closing on Garcia's house, Appellee/Third-Party Defendant, Salvino Verta ("Verta"), as president of J.C. Builders, signed various closing documents that attested that all vendors had been paid. However, Cover-Rite had not been paid and had an outstanding balance of $4,600.00.

Cover-Rite, who failed to timely file a mechanic's lien, filed a small claims notice of claim against Garcia, seeking to recover the $4,600.00 based on a breach of contract. Garcia then filed a counterclaim against Cover-Rite for slander of title. Garcia also filed a third-party claim against J.C. Builders and Verta. On Cover-Rite's complaint, the small claims court entered judgment in favor of Cover-Rite and against Garcia for $4,600.00. On Garcia's third-party complaint, the small claims court entered judgment in favor of Garcia and against J.C. Builders for $4,600.00.

Garcia now appeals the small claims court's judgment against her on Cover-Rite's complaint as well as part of the small claims court's judgment in her favor on her third-

2

party complaint. In regard to Cover-Rite's complaint, Garcia argues that the small claims court erred by finding that Garcia had entered into a contract with Cover-Rite to pay for flooring and by finding that she was liable to Cover-Rite under the theory of unjust enrichment. In regard to Garcia's third-party complaint, Garcia argues that the small claims court erred by failing to enter specific findings, by failing to enter judgment in her favor on her deception claim, and by failing to find that she was entitled to treble damages and attorney fees under INDIANA CODE § 34-24-3-1. Finding no reversible error in the small claims court's rulings, we affirm.

We affirm.

## ISSUES

1. Whether the small claims court erred when it entered judgment on Cover Rite's complaint against Garcia and in favor of Cover-Rite based on breach of contract and unjust enrichment.

2. Whether the small claims court erred when it entered judgment on Garcia's third-party complaint against J.C. Builders and in favor of Garcia but did not enter specific findings on some of Garcia's claims.

## FACTS

On May 7, 2010, Garcia and her husband entered into a construction contract with J.C. Builders for the construction of a single family residence in Lake County, Indiana for $178,360.00.[1]  As part of the construction contract with J.C. Builders, Garcia had a $4,600.00 flooring allowance, which included $2,600.00 for tile and $2,000.00 for carpet.

---

[1] Garcia and her husband contracted to purchase the house as part of the "Garcia Family Trust." (Garcia's Ex. D at 5-6; App. 74).

Additionally, Section Twelve of the construction contract contained the following relevant provisions:

NOTICE TO OWNER

FAILURE OF CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANICS LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT, YOU MAY ASK THE CONTRACTORS FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIALS OR SERVICE FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

\* \* \* \* \*

CONSENT OF OWNER

CONSENT IS HEREBY GIVEN FOR FILING OF MECHANIC'S LIENS BY ANY PERSON WHO SUPPLIES MATERIALS OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT ON THE PROPERTY ON WHICH IT IS LOCATED IF THEY ARE NOT PAID.

(Garcia's Ex. D at 5-6; App. 79).

J.C. Builders gave Garcia a list of two flooring businesses—one of which was Cover-Rite—that J.C. Builders used to install carpet and tile. J.C. Builders instructed Garcia to choose her flooring from one of these businesses and told her that if she went to Cover-Rite, she should "[a]sk for Sue" because Cover-Rite had "worked with her for a long time." (Garcia's Ex. F; App. 89).

Thereafter, on August 27, 2010, Garcia went to Cover-Rite and choose the flooring that she wanted for the house. The total cost of the flooring was $6,845.48, and Garcia paid the $2,245.48 that surpassed her $4,600.00 flooring allowance. That same

day, Cover-Rite wrote up a purchase order, which was on a pre-printed Cover-Rite form. The purchase order indicated that the flooring was "[s]old to" J.C. Builders and that the flooring would be delivered to address of Garcia's new home. (Cover-Rite's Ex. 1; App. 53). The purchase order also showed that the builder allowance was $4,600.00, that Garcia had paid the customer overage of $2,245.48, and that the remaining $4,600.00 was due "C.O.D." (*Id.*). The bottom of the purchase order contained a section marked "CONTRACT," which contained the following relevant small print provisions:

> It is understood by and between the parties that the title and right of possession in and to the said carpeting and materials shall remain in the contractor, or his assigns, until they are fully paid as provided in this contract.
>
> Purchaser further agrees that in the event that it becomes necessary to proceed in law to collect any amount due either upon this contract or for extras, said purchaser will pay the reasonable cost, charges, expenses, including attorney's fees, and court costs and that such sums may be included in any judgement [sic] or decree that may be rendered in favor of said contractor or his assigns; all of which costs, charges, interest and attorney's fees shall be a lien on the said property, or premises in which said property is contained.
>
> This instrument embodies the whole agreement of the parties and the parties hereby agree that there are no promises, terms, conditions, or obligations other than those contained herein; and this contract shall supercede all previous communications, representations, or agreements, either verbal or written, between the parties hereto.

(*Id.*). Garcia signed the purchase order as the "Purchaser." (*Id.*). No one from J.C. Builders signed the purchase order. Thereafter, Cover-Rite installed the flooring in Garcia's house.

5

On October 10, 2010, Garcia closed on the house with J.C. Builders. At the closing, Verta, on behalf of J.C. Builders,[2] presented a signed vendor's affidavit in which he attested, in relevant part, that there were "no unpaid claims for labor done upon or materials furnished for the Real Estate in respect of which liens have been or may be filed." (Garcia's Ex. G at 2; App. 92). Verta's vendor affidavit provided that the statements made in the affidavit should be "construed as a representation . . . made for the purpose of inducing [Garcia] to purchase the Real Estate" and for the title company to issue title insurance for the property. (Garcia's Ex. G at 3; App. 93). In the affidavit, Verta attested that the representations contained in the affidavit were "true" and that J.C. Builders "expressly authorize[d]" Garcia and the title company to "rely on such representations." (Garcia's Ex. G at 3; App. 93). As part of the closing, Verta also signed and submitted a sworn statement to the title company. This sworn statement contained a list of work done by the contractor and subcontractors as well as "the amounts paid and the amounts due or to become due" and included Cover-Rite's name and an amount of $2,000.00 for tile materials. (Garcia's Ex. T; App. 95). At the bottom of the document, above Verta's signature, was a provision stating, "I AGREE TO FURNISH WAIVERS OF THE LEIN [sic] FOR ALL MATERIALS UNDER MY CONTRACT WHEN DEMANDED." (Garcia's Ex. T; App. 95).

At some point after the closing, the owner of Cover-Rite called J.C. Builders to see if its payment for the flooring was with the title company and was informed that there was no check at the title company. Verta told the owner that J.C. Builders would pay

---

[2] Verta was president and half-owner of J.C. Builders. His ex-wife was the other half-owner and vice president, and her brother was the general manager.

6

Cover-Rite the amount due; however, J.C. Builders never paid the $4,600.00 to Cover-Rite.

On February 24, 2011, Cover-Rite filed with the Lake County Recorder a notice of intention to hold a mechanic's lien on Garcia's property. Cover-Rite's notice provided that it sought to hold a lien for $4,600.00 for the labor and materials involved with installing tile and carpeting in Garcia's house. That same day, Cover-Rite's account manager sent Garcia a letter, indicating that "there [was] an open balance of $4600.00 on [Garcia's] account." (Garcia's Ex. I; App. 64).

Thereafter, Cover-Rite obtained counsel to collect the $4,600.00 from Garcia. In August 2011, Cover-Rite's collection attorney sent Garcia a letter, in which Cover-Rite stated that it had a claim against both Garcia and J.C. Builders for $4,600.00 for the flooring. In the letter, Cover-Rite stated that it held Garcia—as "owner[] of the real estate as well as the signator of the contract"—responsible for the amount owed. (Garcia's Ex. K; App. 66). Cover-Rite also stated that Garcia's failure to pay the amount due would result in Cover-Rite foreclosing on its mechanic's lien.

Garcia then obtained counsel and sent Cover-Rite a letter, in which Garcia asserted that Cover-Rite could not perfect a mechanic's lien against her property because its mechanic's lien notice was untimely filed. In the letter, Garcia also asserted that Cover-Rite's failure to release the mechanic's lien would result in her filing a slander of title action, pursuant to INDIANA CODE § 32-20-5-2, against Cover-Rite.

7

Additionally, Garcia's counsel sent Verta a letter in which Garcia alleged that Verta had committed deception under INDIANA CODE §§ 35-43-5-3(a)(2) and (a)(6)[3] and sought "assistance" from Verta "toward securing the release of the Mechanics Lien and Cover-Rite's pursuit of claims against the Garcias[.]" (Garcia's Ex. M; App. 97).

On September 12, 2011, Cover-Rite filed a release of its mechanic's lien against Garcia's property. Cover-Rite, however, informed Garcia that she was "personally obligated for the payment" because she had "signed a contract with Cover-Rite." (Garcia's Ex. O; App. 69).

Cover-Rite's invoice remained unpaid, and on January 17, 2012, Cover-Rite filed a notice of claim against Garcia with the small claims division of the Lake Superior Court. Cover-Rite's claim against Garcia was for "[n]on payment for delivery of goods[,]" and it sought damages totaling the small claims jurisdictional limit of $6,000.00. (App. 13).

On March 1, 2012, Garcia filed a counterclaim against Cover-Rite, alleging that Cover-Rite had filed a "false and fictitious" notice of mechanic's lien that was untimely filed and that the filing of the mechanic's lien had "slandered" the title to her real estate. (App. 20). Garcia also alleged that she "*may* suffer a loss" as a result of Cover-Rite's actions. (App. 20) (emphasis added). Additionally, Garcia alleged that the litigation by Cover-Rite was "frivolous and taken primarily for the purpose of harassing or

---

[3] At the time period relevant to this case, INDIANA CODE § 35-43-5-3(a)(2) provided that "[a] person who. . . knowingly or intentionally makes a false or misleading written statement with intent to obtain property . . . commits deception, a Class A misdemeanor[,]" and INDIANA CODE §§ 35-43-5-3(a)(6) provided that "[a] person who. . . with intent to defraud, misrepresents the identity of the person or another person or the identity or quality of property. . . commits deception, a Class A misdemeanor."

maliciously injuring" her and that Cover-Rite "knew or should have known that the real party in interest and creditor due . . . was J.C. Builders[.]" (App. 20). Garcia also sought attorney fees under the general recovery rule of INDIANA CODE § 34-52-1-1(b).[4]

Additionally, Garcia filed a third-party notice of claim, which she later amended, against J.C. Builders and Verta. In her amended third-party claim, Garcia alleged that

> . . . Verta, on behalf of J.C. Builders, Inc., presented a false and fictitious vendor's affidavit and sworn construction affidavit . . . at the time of closing for final draw with [the title company], and as a result thereof accepted payment with knowledge of an indebtedness due and failed to notify either [the title company] or Heidemarie Garcia of the existence of the outstanding indebtedness.

(App. 35-36). Garcia alleged that she was entitled to recovery under two theories. First, Garcia sought "indemnification from both Salvino Verta and J.C. Builders for any loss or judgment entered herein against Garcia by Cover-Rite, Inc." (App. 36). Second, Garcia alleged that J.C. Builders and/or Verta had committed "a Class D felony pursuant to the provisions of IC [§] 32-28-3-15(4) [relating to the mechanic's lien statute offense of accepting payment for labor or materials subject to outstanding indebtedness.]"[5] (App.

---

[4] INDIANA CODE § 34-52-1-1(b) provides that, in a civil action, a court may award attorney's fees as part of the costs awarded to the prevailing party, if the court finds that either party: "(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless; (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or (3) litigated the action in bad faith." (Format altered).

[5] INDIANA CODE § 32-28-3-15(4), at the time period of this case, provided, in relevant part:

> A person who knowingly or intentionally:
> * * * * *
>    (4) fails:
>        (A) at the time of receiving payment; and
>        (B) with intent to defraud;
>    to notify in writing the person from whom the payment was received of the existence of the outstanding indebtedness; and

9

36). Garcia sought treble damages and attorney fees "pursuant to the provisions of IC [§§] 32-18-2-14 and 15 [relating to fraudulent transfers], IC [§] 34-24-3-1 [relating to the pecuniary loss as a result of property offenses,[6]] and IC [§] 35-43 et seq. [relating to criminal offenses against property.]" (App. 36).

On April 5 and May 30, 2013, the small claims court held a bench trial.[7] During the trial, the owner of Cover-Rite testified that Garcia had entered into a contract with Cover-Rite when she selected her flooring for her house and signed the purchase order for the flooring. Cover-Rite's counsel argued that Cover-Rite was entitled to recover the unpaid $4,600.00 balance from Garcia because she had entered into a contract with Cover-Rite and then breached that contract by failing to pay. Cover-Rite's counsel also

---

> (5) causes the person from whom the payment was received to suffer a loss by failing under subdivision (4) to notify the person of the existence of the outstanding indebtedness;
>
> commits a Class D felony.

[6] INDIANA CODE § 34-24-3-1—sometimes referred to as the treble damages statute, the Crime Victim Relief Act, or the Crime Victim Compensation Act—provides that a person who has "suffer[ed] a pecuniary loss" as a result of certain specified property crimes "may bring a civil action against the person who caused the loss" and seek up to three times the actual damages, costs, reasonable attorney fees, and other expenses. "A criminal conviction is not a condition precedent to recovery under this statute." *Klinker v. First Merchs. Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012). "Rather, the claimant merely must prove each element of the underlying crime by a preponderance of the evidence. *Id.*

[7] We note that part of the transcript from the hearing was not transcribed because "[a] portion of the audio tape [was] blank[.]" (Tr. 37). From a review of the transcript, we are able to see that the blank portion of the audio tape contained, at the very least, Garcia's testimony and part of her husband's testimony. On appeal, Garcia has neither mentioned the incomplete transcript nor attempted to prepare a verified statement of the evidence pursuant to Appellate Rule 31. The Lake Superior Court, however, included a Notice of Filing of Affidavit along with an Affidavit from the Lake Superior Court Magistrate, who attested that "there was a malfunction of the recording equipment and that part of the tape [was] unintelligible" and advised that Garcia's Exhibit D was admitted into evidence and should be part of the record. These two documents were filed stamped by the Lake County Clerk and were inserted in the back of the Transcript. Thus, they were not filed with the Clerk of our Court. We prefer that the parties and the trial court handle matters relating to an unavailable transcript by utilizing our Appellate Rules and filing any necessary motions or pleadings with the Clerk of our Court.

argued that Garcia was unjustly enriched because she received the flooring but did not pay Cover-Rite for it. Counsel acknowledged that Garcia paid J.C. Builders for the flooring but argued that she should seek recovery from J.C. Builders under her own contract with the builder.[8]

From the transcript presented on appeal, there was no dispute that Garcia signed the purchase order for the flooring. Instead, Garcia's defense to Cover-Rite's claim was that she did not enter into a contract with Cover-Rite to pay the $4,600.00 and that Cover-Rite should have filed a claim against J.C. Builders. Garcia's husband testified that he understood that, according to his construction contract with J.C. Builders, his failure to secure lien waivers could result in paying twice for labor and materials. During closing argument, Garcia's counsel acknowledged that Garcia had signed the purchase order but argued that "[s]he was, in affect [sic], acting as an agent for J.C. Builders." (Tr. 100). Her counsel argued that Garcia should not be responsible for payment of the flooring because there was no notice in the purchase order that Garcia would be liable for the amount of the builder's allowance.

In relation to Garcia's third-party claims against J.C. Builders and Verta, Garcia introduced copies of J.C. Builders' vendor affidavit and sworn construction statement signed by Verta for Garcia's closing. Garcia's husband testified that, prior to the closing, he asked J.C. Builders' general manager, Chuck Snowdy ("Snowdy"), who was Verta's brother-in-law, about obtaining lien waivers, and Snowdy responded that "he would not

---

[8] Cover-Rite also argued that Garcia's counterclaim against Cover-Rite for slander of title for filing a mechanic's lien was without merit because she had not offered any evidence of damages caused by the filing of the lien.

11

have them" and "assure[d]" Garcia's husband that "they were paid." (Tr. 48). At trial, in addition to Garcia's third-party claim relating to the mechanic's lien statute offense of accepting payment for labor or materials subject to outstanding indebtedness, she also tried by implication a claim of deception. Garcia's counsel argued that Verta's submission of the J.C. Builders sworn closing documents constituted deception under INDIANA CODE §§ 35-43-5-3(a)(2) and (a)(6).[9]

Verta testified that Snowdy had prepared the vendor's affidavit and sworn statement for the closing on Garcia's house. He also testified that, when he signed the closing documents, he thought that all vendors had been paid and was unaware that Cover-Rite had not been paid. Verta testified that he had first learned of Cover-Rite's outstanding balance sometime after the closing when someone from Cover-Rite had phoned him. According to Verta's testimony, he spoke to Cover-Rite and to Garcia about Cover-Rite's outstanding balance and told them both that he would look into the non-payment issue. Verta testified that he was going through a divorce at that time and that when he looked into the issue, he discovered that his ex-wife had taken money from J.C. Builders' company bank account and that several vendors had not been paid. Verta testified that J.C. Builders was no longer in business at the time of his divorce[10] but

---

[9] Garcia's counsel argued that the law upon which Garcia was relying for her claims was "laid out in the two letters that I brought in[to evidence]" and included the "mechanic's lien statute and the fraudulent claim statute." (Tr. 102). The two letters upon which Garcia relied were the letters her counsel sent to Verta and to Cover-Rite's attorney in August 2011.

[10] According to Verta, his ex-wife may have been awarded the assets associated with J.C. Builders when their dissolution decree was entered in June 2012. Apparently, there was no provision made in the dissolution decree for the outstanding debts of J.C. Builders.

indicated that he still had tools belonging to J.C. Builders that he had been paying to keep in storage.

At the end of the trial, the magistrate of the small claims court stated that she would research the issues and take the case under advisement. The magistrate then gave the parties "a few thoughts to [let them] know where [she was] going." (Tr. 112). Specifically, the magistrate stated that "[t]here [were] no winners" in this case. (Tr. 113). She indicated that Cover-Rite was an "innocent party" but was "sloppy" because it sold materials for which it did not get paid. (Tr. 113). The magistrate acknowledged Garcia's argument that she had already paid J.C. Builders for the flooring through her construction contract and her contention that Cover-Rite should "have went [sic] after" or sought payment from J.C. Builders and Verta, but the magistrate stated that there was no contractual relationship between Cover-Rite and J.C. Builders. (Tr. 114). The magistrate reminisced of how "business used to be" where people were "able to shake a hand and do things." (Tr. 113). The magistrate compared Garcia and Verta and stated that they both had signed a document without paying close attention to the contents; specifically, Garcia "signed something that said purchaser and I'm going to pay for it[,]" and Verta signed the vendor affidavit and sworn construction statement that indicated that there were no unpaid claims for labor. (Tr. 114). In regard to Garcia's claim against Verta—as an individual—based on him signing the closing documents without "paying attention whatsoever[,]" the magistrate agreed that it was "wrong" but indicated a reluctance to find him individually liable because Garcia had not presented any testimony to show a

13

piercing of the corporate veil. (Tr. 116).[11] The small claims court magistrate stated that this case had "basically, very, very good people who [were] in a bad situation." (Tr. 117). The magistrate stated that she would research the issues and explained to the parties that despite the "informal process" of the small claims court, she was still "bound by the law . . . of the State of Indiana." (Tr. 117).

On July 12, 2013, the small claims court entered the following order:

> The Court finds that the Defendant, HeideMarie Garcia, entered into a contractual agreement with the Plaintiff, Cover Rite Carpet, Inc. Further, the Defendant [Garcia] received the carpet and would be unjustly enriched if the Plaintiff [Cover-Rite] were not allowed to recover the cost of the goods and services. Judgment for the Plaintiff [Cover-Rite] in the amount of Four Thousand Six Hundred Dollars ($4,600.00) plus Court Costs and Judgment Interest. Each party to bear their own attorney fees.

> The Court also finds in favor of the Third-Party Plaintiff, HeideMarie Garcia, and against the Third-Party Defendant, J.C. Builders Inc. Judgment for the [Third-Party] Plaintiff [Garcia] in the amount of Four Thousand Six Hundred Dollars ($4,600.00) plus Court Costs and Judgment Interest.

(App. 11). Garcia now appeals. Additional facts will be provided as necessary.

## DECISION

Garcia challenges the small claims court's judgment in regard to both Cover-Rite's complaint against her and her third-party complaint against J.C. Builders and Verta. Specifically, in regard to Cover-Rite's complaint, Garcia argues that the small claims court erred by finding that Garcia had entered into a contract with Cover-Rite to pay for flooring and by finding that she was liable to Cover-Rite under the theory of unjust enrichment. In regard to Garcia's third-party complaint against J.C. Builders and

---

[11] The magistrate also stated that Garcia had not met her burden on her slander of title counterclaim against Cover-Rite.

14

Verta, Garcia argues that the small claims court erred by failing to enter specific findings, failing to enter judgment in her favor on her deception claim, and by failing to find that she was entitled to treble damages and attorney fees under INDIANA CODE § 34-24-3-1. Garcia contends that this Court should vacate the judgment against her, enter judgment in her favor on her third-party deception claim against Verta, and award her $13,800 (three times her damages of $4,600.00) plus attorney fees allowed under the INDIANA CODE § 34-24-3-1.[12]

Before addressing Garcia's arguments, we observe that neither Cover-Rite nor J.C. Builders and Verta have filed an appellate brief. When an Appellee fails to submit an appellate brief "we need not undertake the burden of developing an argument on the [A]ppellee's behalf." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Instead, "we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error." *Id.* "Prima facie error in this context is defined as, 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)). When the appellant is unable to meet this burden, we will affirm the trial court's ruling. *Id.*

1.     Judgment on Cover-Rite's Complaint

In regard to the small claims court's judgment on Cover-Rite's complaint, Garcia argues that the small claims court erred by: (1) entering judgment against her based on breach of contract; and (2) entering judgment against her under theories of both unjust enrichment and breach of contract.

---

[12] Garcia makes no mention of the small claims $6,000.00 jurisdictional limit.

15

Our Indiana Supreme Court has explained our standard of review of a contract claim filed in small claims court as follows:

> Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This "deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" *City of Dunkirk Water & Sewage Dep't v. Hall*, 657 N.E.2d 115, 116 (Ind. 1995) (quoting S.C.R. 8(A)). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Lae v. Householder*, 789 N.E.2d 481, 483 (Ind. 2003). Similarly, where a small claims case turns solely on documentary evidence, we review de novo, just as we review summary judgment rulings and other "paper records." *See Harrison v. Thomas*, 761 N.E.2d 816, 818 (Ind. 2002) (reviewing the trial court's decision de novo after a bench trial where the parties relied on documentary evidence); *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind. 2006) ("To the extent the evidence the parties offered is admissible, it is documentary . . . our standard of review is de novo.").

*Trinity Homes*, 848 N.E.2d at 1067-68. Where the issue in a case involves the meaning of a contract, we will conduct a de novo review of such a "pure question of law[.]" *Id.* at 1068.

Garcia makes various alternative arguments challenging the small claims court's breach of contract judgment against her. On appeal, she does not dispute that the Cover-Rite purchase order was a contract. Neither does she dispute that she entered into a contract with Cover-Rite by virtue of signing this purchase order. Instead, Garcia argues that the Cover-Rite contract was unambiguous and that it "required J.C. Builders to pay the $4,600 builder's allowance and Garcia to pay only the customer overage." (Garcia's

16

Br. 11) (font altered). She alternatively argues that the Cover-Rite contract was ambiguous but that the parties' intent was that J.C. Builders would pay the $4,600.00 builder's allowance.

We cannot agree with either of Garcia's arguments because both arguments imply either that J.C. Builders was a party to the contract—which it was not—or that she was able to bind J.C. Builders to performance under her contract with Cover-Rite—which she cannot do (absent a principal/agent relationship that she does not argue exists).[13] While the purchase order provides that Garcia has a builder's allowance of $4,600.00, the contract was not signed by anyone from J.C. Builders guaranteeing the payment of the builder's allowance. Garcia chose the flooring she wanted for her house, informed Cover-Rite that she had a builder's allowance, and signed the Cover-Rite contract as the purchaser. As purchaser, Garcia "agree[d]" that

> in the event that it bec[a]me[] necessary to proceed in law to collect any amount due either upon this contract or for extras, *said purchaser will pay the reasonable cost, charges, expenses*, including attorney's fees, and court costs *and that such sums may be included in any judgement [sic] or decree that may be rendered in favor of said contractor* [Cover-Rite.]

(Cover-Rite's Ex. 1; App. 53) (emphasis added). Ideally, J.C. Builders would have paid the builder's allowance pursuant to its construction contract with Garcia; however, the fact that J.C. Builders did not pay the flooring allowance does not change the terms of the

---

[13] *See Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind. 1999) (discussing an agent's ability to bind a principal to a contract with a third party based on the doctrine of "apparent authority"); *Guideone Ins. Co. v. U.S. Water Sys. Inc.*, 950 N.E.2d 1236, 1241 (Ind. Ct. App. 2011) (discussing apparent and actual authority and explaining that "[i]n general, a principal will be bound by a contract entered into by the principal's agent on his behalf only if the agent had authority to bind him") (citing *Gallant Ins. Co. v. Isaac,* 751 N.E.2d 672, 675 (Ind. 2001)).

17

contract between Garcia and Cover-Rite. Accordingly, we affirm the small claims court's breach of contract judgment against Garcia on Cover-Rite's complaint.

Next, turning to Garcia's secondary argument that the small claims court erred by entering judgment against her under theories of both breach of contract and unjust enrichment, we acknowledge that "'[w]hen the rights of the parties are controlled by an express contract, recovery cannot be based on a theory implied in law[,]'" such as unjust enrichment. *Zoeller v. E. Chicago Second Century, Inc.,* 904 N.E.2d 213, 221 (Ind. 2009) (quoting *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992), *trans. denied*), *reh'g denied*. "The existence of an express contract precludes a claim for unjust enrichment because: (1) a contract provides a remedy at law and (2) as a remnant of chancery procedure a plaintiff may not pursue an equitable remedy when there is a remedy at law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011). However, our Court has held that there is an exception to this rule. *Id.* Specifically, "when an express contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." *Id.* (citing various cases from other jurisdictions). "Stated another way, the existence of a contract, in and of itself, does not preclude equitable relief [that] is not inconsistent with the contract." *Id.*

Even assuming that that this exception did not apply and that the small claims court erred by entering judgment under the theory of unjust enrichment, any such error would be harmless because Garcia has not shown that she was prejudiced by the ruling and because we have already affirmed the small claims court's breach of contract judgment against Garcia. *See P.S. by Harbin v. W.S.*, 452 N.E.2d 969, 976 (Ind. 1983)

18

(explaining that in order to constitute reversible error, the complaining party must show both an erroneous ruling and prejudice resulting therefrom). Accordingly, we affirm the small claims court's judgment on Cover-Rite's complaint. *See, e.g.*, *id.* at 976-77 (holding that even if the juvenile court erred in its assignment of the burden of proof, such error was harmless in light of "overwhelming evidence"); *Wendt v. Kerkhof*, 594 N.E.2d 795, 798 (Ind. Ct. App. 1992) (holding that although the trial court erred by finding that a legal doctrine applied to the plaintiffs' nuisance claim, any error was harmless because the trial court nevertheless made a proper ruling and the plaintiffs did not show they were prejudiced), *trans. denied*.

2.    Judgment on Garcia's Third-Party Complaint

Turning to Garcia's final issue in this appeal, we recall that the small claims court entered judgment against J.C. Builders and in favor of Garcia on her third-party complaint. Nevertheless, Garcia contends that the small claims court erred in its judgment.

Because Garcia is appealing a judgment entered where she had the burden of proof, she appeals from a negative judgment and, as a result, she must show that the evidence points unerringly to a conclusion different from that reached by the trier of fact, or that the judgment is contrary to law. *Wilder-Newland v. Kessinger*, 967 N.E.2d 558, 560 (Ind. Ct. App. 2012), *trans. denied*. "This means that even if we might have taken a different course of action than that which a trial court took, we are bound to review the order, and findings and conclusions, for clear error only." *Id.*

We note that the trial court's judgment on Garcia's third-party claim against J.C. Builders does not contain specific findings and was instead entered as a general judgment. "In the absence of special findings, we review a trial court decision as a general judgment and, without reweighing evidence or considering witness credibility, affirm if sustainable upon any theory consistent with the evidence." *Perdue Farms, Inc. v. Pryor*, 683 N.E.2d 239, 240 (Ind. 1997). Additionally, "[i]n reviewing a general judgment, we must presume that the trial court correctly followed the law." *Id.*

Here, Garcia asserted two claims in her third-party complaint against J.C. Builders and Verta. Specifically, she alleged that she was entitled to judgment against both of them based on: (1) indemnification; and (2) their violation of INDIANA CODE § 32-28-3-15(4), which relates to the mechanic's lien statute offense of accepting payment for labor or materials subject to outstanding indebtedness. At trial, Garcia tried by implication a claim of deception and argued that Verta's submission of the J.C. Builders vendor's affidavit and closing statement constituted deception under INDIANA CODE §§ 35-43-5-3(a)(2) and (a)(6). Garcia asserted that she was entitled to treble damages and attorney fees pursuant to INDIANA CODE § 34-24-3-1 ("the treble damages statute"), which would have been based on her claim of deception.[14] The small claims court entered a general judgment in favor of Garcia on her third-party complaint, entering judgment against J.C. Builders only for $4,600.00 plus court costs.

---

[14] Garcia's deception claim is the only one of her claims that would qualify for a request for treble damages and attorney fees under INDIANA CODE § 34-24-3-1. *See* I.C. § 34-24-3-1.

On appeal, Garcia contends that the small claims court erred because it did not enter specific findings. Garcia also contends that the small claims court erred by failing to enter a specific judgment on her deception claim and on her request for relief under the treble damages statute.[15] We do not agree.

First, we find no error in the small claims court's entry of a general judgment on Garcia's third-party complaint. Trial Rule 52(A) provides that in a case tried without a jury, a trial court is required to "find the facts specially and state its conclusions thereon" only "[u]pon its own motion," or upon "the written request of any party filed with the court prior to the admission of evidence[.]" The trial court is, however, required to make special findings of fact without request in specific situations not applicable to this case and "in any other case provided by these rules or by statute." *See* Ind. Trial Rule 52(A)(3). Garcia did not, nor did the other parties, request special findings under Trial Rule 52. Additionally, Garcia does not direct us to any rule or statute that would have required the small claims court to enter specific findings. Accordingly, the small claims court did not err by entering general findings on Garcia's third-party complaint. *See, e.g.*, *Warner v. Warner*, 534 N.E.2d 752, 754-755 (Ind. Ct. App. 1989) (concluding that the trial court did not err by failing to make specific findings where appellant did not claim to have requested specific findings pursuant to Trial Rule 52).

Next, we find no error in the small claims court's lack of specific judgment on Garcia's deception claim and request for damages and attorney fees under the treble

---

[15] On appeal, Garcia argues the small claims court should have entered judgment that Verta committed deception under INDIANA CODE § 35-43-5-3(a)(2) and (a)(3). However, at trial, Garcia did not raise a claim of deception under section (a)(3). Therefore, Garcia has waived any such argument on appeal.

21

damages statute. While it is undisputed that Verta signed the sworn closing documents (i.e., the vendor's affidavit and the sworn construction contract), he testified that he was not aware that vendors had not been paid when he signed these documents. Garcia's challenge to the small claims court's lack of specific judgment on her deception claim under INDIANA CODE § 35-43-5-3(a)(2)—which required her to show that J.C. Builders "knowingly or intentionally ma[d]e[] a false or misleading written statement with intent to obtain property"—is nothing more than a request for this Court to reweigh the evidence and judge the credibility of witnesses, which we will not do.[16] *See Perdue Farms*, 683 N.E.2d at 240.

Furthermore, because the small claims court entered a general judgment, we can affirm the judgment on any theory consistent with the evidence. *See id.* As noted above, Garcia raised third-party claims of indemnification, deception, and a violation of the mechanic's lien statute. The record before us does not indicate upon which of Garcia's claims that the small claims court entered judgment in her favor. We need not, however, divine which basis the trial court used to grant judgment in Garcia's favor because the small claims court's judgment can be affirmed on Garcia's claim of indemnification.

> Indemnity is a right which inures to one who discharges a duty owed by him, but which, as between himself and another, should have been discharged by the other.
>
> The right to indemnity stands upon the principle that everyone is responsible for the consequences of his own negligence, and if another

---

[16] Because Garcia has failed to show that she was entitled to judgment on her deception claim, she, in turn, is not entitled to an award of treble damages and attorney fees under the treble damages statute. *See* INDIANA CODE § 34-24-3-1 (setting forth a specific list of statutes that *violation* of which serve as a basis for a person to seek treble damages and attorney fees).

22

> person has been compelled to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him. Indemnity requires full reimbursement, and transfers liability from the one who has been compelled to pay damages to another who should bear the entire loss.

*INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 575-76 (Ind. Ct. App. 2003) (quoting 41 AM.JUR. 2d *Indemnity* § 1 (1995)), *trans. denied*.

"Generally, the right of indemnification arises only by contract, express or implied, or by statutory obligation." *Rotec, Div. of Orbitron, Inc. v. Murray Equip., Inc.*, 626 N.E.2d 533, 535 (Ind. Ct. App. 1993), *reh'g denied*. "However, a right to indemnity may be implied at common law." *Id.* (citing *Indianapolis Power & Light Co. v. Snodgrass*, 578 N.E.2d 669, 670-671 (Ind. 1991); *Elcona Homes Corp. v. McMillan Bloedell Ltd.*, 475 N.E.2d 713, 715 (Ind. Ct. App. 1985), *reh'g denied*, *trans. denied*). "In the absence of any express contractual or statutory obligation to indemnify, such action will lie only where a party seeking indemnity is without actual fault but has been compelled to pay damages due to the wrongful conduct of another for which he is constructively liable." *Id.* *See also Mullen v. Cogdell*, 643 N.E.2d 390, 400 (Ind. Ct. App. 1994) ("The right to indemnity may be implied at common law only in favor of one whose liability to another is solely derivative or constructive and only against one whose wrongful act has caused such liability to be imposed.") (citing *Indianapolis Power*, 578 N.E.2d at 671), *reh'g denied*, *trans. denied*. "The obligation to indemnify does not arise until the party seeking indemnity suffers loss or damages[.]" *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 848 (Ind. Ct. App. 2010), *trans. denied*. "In contribution or indemnification cases, the damage that occurs is the

incurrence of a monetary obligation that is attributable to the actions of another party."

*Pflanz v. Foster*, 888 N.E.2d 756, 759 (Ind. 2008). *See also Coca-Cola Bottling Co.-Goshen, Ind. v. Vendo Co.*, 455 N.E.2d 370, 373 (Ind. Ct. App. 1983) (explaining that one of the elements of a claim for indemnity is that a claimant "has paid or been compelled to pay a judgment recovered by the injured person"). *Cf. TLB Plastics Corp. v. Procter & Gamble Paper Prods. Co.*, 542 N.E.2d 1373, 1376 (Ind. Ct. App. 1989) (stating that a party seeking indemnity suffers loss "at the time of payment of the underlying claim, payment of a judgment on the underlying claim, or payment in settlement of the underlying claim"), *reh'g denied*, *trans. dismissed*.

Garcia did not allege that J.C. Builders had an express contractual indemnification provision or a statutory obligation to indemnify her. Thus, her indemnification claim must have been based on the right to indemnity implied at common law. Based on the specific facts of this case—where Garcia is without fault and has been compelled to pay damages due to the wrongful conduct of J.C. Builders—we conclude that the record before us supports a judgment in favor of Garcia based on a right to indemnification implied at common law, and we affirm the small claims court's judgment in favor of Garcia.[17]

---

[17] Because the small claims court's judgment can be affirmed under this indemnification theory, Garcia is not entitled to treble damages or attorney fees as indemnification is not a claim upon which a person may seek treble damages and attorney fees under INDIANA CODE § 34-24-3-1.

24

Affirmed.[18]

FRIEDLANDER, J., and MATHIAS, J., concur.

---

[18] Garcia also suggests that the small claims court should have found Verta "personally liable" for the $4,600.00 and entered judgment against him. (Garcia Br. 17). Again, this argument is nothing more than a request to reweigh the evidence, which we will not do.